A. HOWARD EARP, W. HARRY DAVIS and GROS-
VENOR HANSON, The Board of County Com-
missioners of Howard County, and the
POSTAL TELEGRAPH CABLE COM-
PANY, A Body Corporate, *vs.*
JESSE W. PHELPS.

*Public roads: right of traveling public. Telegraph poles: on
public highways; negligence in placing—; injury to party
on lazy board by collision of wagon and telegraph pole.
Contributory negligence: generally question for jury.
Negligence: prayers; when particular elements of testi-
mony need not be characterized. Exclusion of
proper evidence; when no ground for rever-
sal. Witnesses: arrangements with oppo-
site party; payment of expenses;
evidence. Joint defendants: lia-* 
bility; prayers.*

The use of a public road for the maintenance of telegraph poles,
is surbordinate to purposes of public travel, for which such
roads are primarily intended.                    p. 287

In Article 23, section 359 of the Code of 1912, providing that
such poles, etc., shall not be constructed so as to incommode
injuriously the public use of such roads, etc., etc., or interfere
with the convenience of the landowners more than is unavoid-

able, the words *"more than is unavoidable"* qualify only the right to interfere with the convenience of landowners, and have no relation to the provision against incommoding the public.                                    p. 288

Although an issue be one of fact, it should not be made the subject of mere conjecture or capricious judgment and should not be submitted to the jury in the absence of proof legitimately tending to support the theory upon which recovery is sought.                                    p. 289

The question of contributory negligence is one for the jury to determine from all the facts of the case, unless the act relied on to establish it is distinct, prominent and decisive, and one about which ordinary minds would not differ in declaring it to be negligence.                                    p. 290

The fact that the plaintiff was riding at night in his accustomed seat on the lazy board on the left-hand side of a hay wagon, which projected some two and one-half feet beyond the wheels, while the wagon, in order to pass a team going in the same direction, was driving on the left-hand side of the road, by means of which the plaintiff's leg was crushed against a telegraph pole, which in the darkness the plaintiff did not see, and which was immediately adjacent to the traveled portion of the road, was *held* not to be such a distinct and decisive act of contributory negligence, such as to make erroneous a submission of the question to the jury.                                    p. 290

As the jury were instructed that the plaintiff's recovery depended in part upon a finding that he was at the time of the accident using ordinary care and prudence, it was not necessary that the jury be separately told that it was the plaintiff's duty to look out for the telegraph pole.                                    p. 292

Where the evidence offered by the plaintiff in a suit for damages because of the defendant's negligence, tended as a whole to show that the condition complained of was unsafe, there is no occasion to specially characterize any of its elements in the testimony.                                    p. 291

The right of recovery of one riding in the usual way on the lazy board of a wagon in order to apply the brakes, and who

is injured by contact against a telegraph pole, is not affected by the negligence of the driver of the wagon, when the latter is not the plaintiff's agent or servant. p. 293

The exclusion of proper evidence is no ground for a reversal when the same facts for which the evidence was offered is otherwise proved without objection or contradiction. p. 293

In a suit for damages for injuries received from the negligence of the defendant, a witness who had been summoned by the plaintiff, on being examined by him, testified that he had been in communication with the defendant; *held,* that under the circumstances it was proper for the plaintiff to ask the witness, who had paid his expenses, and his reply, that they had been paid by the defendant, was properly admitted, as an explanation of the plaintiff's omission to interrogate the witness as to the material facts of the case. p. 294

Where a telegraph pole is located in immediate proximity to the prepared and used portion of a public highway at a point where the space available for travel is considerably less than the usual legal width of thirty feet, it can not properly be determined as a matter of law that the pole could be so placed without liability, on the part of those by whom it is erected and maintained, for an injury it occasions to one using the road in a lawful and customary manner. pp. 288-289

*Decided April 9th, 1913.*

Appeal from the Court of Common Pleas of Baltimore City (DUFFY, J.), to which Court the case had been removed from the Circuit Court for Howard County.

The appellee, while riding on the lazy board of a hay wagon, in Howard County, by colliding with a telegraph pole planted in the turnpike, had his leg crushed, and was obliged to have it amputated. Suit was brought in Howard County against the County Commissioners and the telegraph company. The suit was removed to the Court of Common Pleas of Baltimore City, where a verdict was ren-

dered in favor of the plaintiff for $10,000.00. The defendants appealed.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Reuben D. Rogers* and *C. Baker Clotworthy* for the appellants.

*Edward M. Hammond,* for the appellee.

URNER, J., delivered the opinion of the Court.

This appeal is from a judgment recovered against the appellants for injuries received by the appellee in colliding with a telegraph pole while he was riding on the lazy board of a wagon on a public highway. The sufficiency of the declaration was considered and sustained on a former appeal, *Phelps* v. *Howard Co.,* 117 Md. 175. Upon the remanding of the case a general issue plea was filed, and a trial ensued in the course of which a number of exceptions were reserved, including the question as to whether the evidence offered was legally sufficient to support the issue joined. The contrary theory has been ably presented by counsel for the appellants, and to this important inquiry we will first direct our attention.

The former opinion, in referring to the averment that the road was unsafe by reason of the danger of collision to which persons using it were exposed on account of the presence of a telegraph pole in close proximity to the travelled way, proceeded to say: "The issue thus presented is essentially one of fact, and as such it must be determined upon a consideration of the evidence, when adduced, showing the dimensions, conformation and established use of the highway." The proof as to these features of the case tends to show that at the time

of the accident the portion of the road reservation prepared for travel was about twenty-two and a half feet wide, this being the distance between the telegraph pole in question and a locust tree on the opposite side of the road; that the intervening space was level, except for a downward slope of about six inches from the middle portion of the road towards the pole on one side and the tree on the other; and that the whole of this space was used for travel. The road supervisor testified that the surface was worked and graded as far to the sides as the pole and the tree would permit, that the plow of the road machine sometimes ran against the pole in the course of this work, that "you could drive right up to the pole" and that people traveled "along there;" that the plaintiff stated in his testimony that the road "was used all the way from the tree to the telegraph pole."

The conditions at the place of the collision having been thus indicted the accident will now be described in the plaintiff's own language. He testified: "I was coming home from taking a load of bailed straw away and it was dark and there was another team coming up this road and our horses walking a little faster than his, and they kind of swerved off to keep from walking right into the back of this wagon and they walked on the side a little way and there was a postal company pole out in the edge of the roadway and I was sitting on the lazy board and came in contact with this pole. I didn't see it. It was dark and it caught me on the limb below the knee between this board and the pole and rendered me unconscious."

The lazy board of a wagon, as shown by the testimony, is adjusted in front of the rear wheel on the left, and when drawn out to its full length extends about two and a half feet beyond the hub. It furnishes a seat for the man who applies the brakes. The plaintiff was performing this duty on the night of the accident and had resumed his seat a few minutes before the collision after having operated the brake bar at the end of the wagon in descending a hill. The proof

admits of a finding that the plaintiff was brought into contact with the pole while the wagon was in the travelled part of the way and while the plaintiff was riding in a proper and customary manner.

In the decision of such a question as the one now under consideration the fundamental rule to be kept in mind is that the use of a public road for the maintainance of telegraph poles and similar structures is subordinate to the purposes of public travel for which the road is primarily intended.   The statute authorizing corporations to construct their lines along and upon the highways and across the bridges and waters of the State, by the erection of the necessary fixtures, provides that they "shall not be so constructed as to incommode injuriously the public use of said postal roads or postal routes, roads, highways and bridges, or injuriously interrupt the navigation of said waters, or interfere with the convenience of any land owner more than is unavoidable.   *Code* 1904, Article 23, section 324; *Annotated Code* 1912, Article 23, section 359.   The former opinion assumed that the defendant telegraph company was entitled to the benefit of the privilege thus conferred; and in any event it certainly could not claim a more advantageous position than the Act would afford.   In disposing of the demurrer, and of the contention that in view of the statute referred to the defendant company was in the exercise of a lawful right in locating the pole on the roadway, and that so long as it was not placed within the limits of the travelled or prepared way and did not narrow or restrict the space thus defined, it could not be said to incommode the public use, we adopted the principle applied in *Little* v. *Cen., etc., Tel. Co.,* 213 Pa. St. 229 (62 Atl. 848), in the interpretation of a similar act, and held that if a pole is erected so near the beaten track as to endanger the safety of travellers, it must be regarded as incommoding the public in the use of the road.

The appellant's brief contains a suggestion that the prohibition of the Act was merely that the public use of the roads shall not be injuriously incommoded *more than is unavoidable.* We do not so construe the meaning of the statute. The term "unavoidable" is plainly intended to qualify only the restriction upon interference with the convenience of land owners, and has no relation to the provision against incommoding the public use, to which the adverb "injuriously" is applied.

The question, therefore, we have now to decide is whether the evidence in the case admits of a legitimate inference that the pole in question was so placed in the highway as to injuriously incommode its use for the purposes of public travel or constitute "a source of danger by reason of its close proximity to the travelled portion of the road." 117 Md. 178.

In *Little* v. *Cen., etc., Tel. Co., supra,* the evidence was held to be legally sufficient to show that a pole with which a young woman collided, while riding on the side of a hay wagon, was located on the travelled portion of a road or in such close proximity to it as to endanger the safety of persons using the highway. The evidence in that case showed that the plaintiff at the time of the accident, which occurred at night, was seated on the "side of the hay wagon with her feet extended out over the bow of the hay rack which was over the rear wheel," and the wagon "slightly grazed the pole in passing," with the result that the plaintiff was knocked off and injured. The conditions thus disclosed are very closely analagous to those appearing upon this record. In this case the pole stood in immediate proximity to the part of the road which the proof tends to show was prepared and used for public travel. As thus located it was an object against which a vehicle on the travelled way could readily strike in passing. The road space available for travel was considerably less than the usual legal width of thirty feet, and it can not be said to have been so wide as to make the danger

of collision with the pole too remote and improbable to be reasonably anticipated by those who were responsible for its location. In view of these circumstances we are not justified in declaring as a matter of law that the pole could be erected and maintained at the place indicated in the evidence without liability on the part of the defendants for the injury it occasioned to one using road in a lawful and customary way.

While, as we have said, an issue like the present is essentially one of fact, it should, of course, not be made the subject of mere conjectural or capricious judgment and should not be submitted to the jury in the absence of proof legitimately tending to support the theory upon which recovery is sought; but in the case now under consideration we do not think it can be properly held that the evidence is legally insufficient for that purpose.

The cases cited by the appellants in this connection deal with objects placed on the lines of divisions between streets and sidewalks in towns and cities, and the principles appropriate to such conditions do not effect the question as to whether, under the very different circumstances here shown, the jury should have been permitted to pass upon the issue of fact presented by the pleadings.

By separate prayers it was proposed that a verdict be directed for each of the two defendants. It was not urged in argument, however, that either should be exempted independently of the other, and as both were responsible for the maintainance of the condition to which the suit relates, we must hold, in accordance with the view already stated, that the proposed instructions were properly refused.

The question upon which we have passed was raised by the first and second prayers filed by each of the defendants. Their third prayer sought to have the jury instructed that upon the undisputed evidence the plaintiff did not exercise reasonable care to avoid coming in contact with the pole, but by his own want of care and prudence contributed directly to the injury of which he complains, and that the verdict

should, therefore, be for the defendants. Upon this point the plaintiff testified that he was familiar with the road and the location of the pole, but that on the occasion of the accident he could not see the pole by reason of the darkness, although he was looking in the direction in which the team was moving, and that he did not know that he was near enough to the pole to be in any danger of collision. He stated that while he knew the wagon was about to pass to the left of the team in front, he did not think he was being driven far enough over on that side to strike the pole. The contention is that he ought to have realized the risk to which he was thus exposed and have provided for his safety. It is a familiar rule that the question of contributory negligence is one "for the jury to determine from all the circumstances of the particular case, unless the Act relied on to establish it is distinct, prominent and decisive, and one about which ordinary minds would not differ in declaring it to be negligent." *Roth* v. *Highways Commission,* 115 Md. 479; *Heinz* v. *B. & O. R. R. Co.,* 113 Md. 582; *Strauss* v. *United Rys. Co.,* 101 Md. 499. Upon the proof in this case we are unable to hold that contributory negligence on the part of the plaintiff has been conclusively established. In reviewing the conditions after the accident we may think that it would have been more prudent for him to have occupied some other position on the wagon, but we are not willing to decide that his conduct in retaining his accustomed seat on the lazy board, under the circumstances, was so distinctly and decisively negligent as to prevent his recovery. The question was for the jury to determine, and it was duly submitted to their consideration by instructions granted at the instance of the defendants.

The fourth prayer of the defendants requested an instruction that as the pole, according to the undisputed evidence, was not placed in the traveled portion of the road, and as there was no evidence that the conformation of the road had anything to do with the accident, therefore, if the jury

should find that the traveled part of the road, at or about the
point of the accident, was ample for the ordinary uses of
travel over the road, the verdict should be for the defend-
ants.  We have held that the plaintiff's right of action was
sufficiently supported by proof that the pole, though not in
the traveled way, was so near that part of the road as to be a
source of danger, and we have found in the record legally
sufficient evidence to support this theory.  Inasmuch as the
danger of collision with such an object might exist notwith-
standing the fact that the roadway may be, of ample width for
the ordinary purposes of travel, and as the prayer disregards
this consideration, we are of opinion that the refusal to grant
the proposed instruction was proper.

The theory of the defendant's fifth prayer was that as the
plaintiff had been familiar with the location of the pole for
a number of years and had never made any complaint as to
its being so placed or maintained, it was necessary for him
to show on account of what condition, with respect to the
dimensions, conformation and established use of the roadway
the pole as placed was in fact dangerous to travel.  Since the
evidence offered by the plaintiff tended as a whole to show
that the condition of which he complains was unsafe, there
was no occasion to specially characterize any of its elements
in the testimony, and the Court below was right in declining
to accept the suggestion in the prayer to that effect.  By a
granted prayer of the defendants the burden of proving that
the pole as located constituted a danger to ordinary travel
on the road was imposed upon the plaintiff, and the ques-
tion as to whether it created an unsafe condition was dis-
tinctly left to the jury.

The defendants excepted to the granting of two of the
prayers offered by the plaintiff.  These prayers, dealing sepa-
rately with the liability of the respective defendants, after
reciting the statute to which we have heretofore referred,
instructed the jury that if they should find that the defend-
ant telegraph company erected and maintained a telegraph

pole in the edge of the road mentioned in evidence, near the traveled portion thereof, in a dangerous position for persons using the traveled part of the roadway, and that the plaintiff while riding on the lazy board of a hay wagon on that portion of the road collided with the pole and was thereby injured and that the evening of the accident was so dark that the plaintiff could not see the pole, then the plaintiff was entitled to recover, provided the jury should find that he was at the time of the accident using ordinary care and prudence and that the driver of the team was also observing ordinary care and prudence in driving to avoid the collision. Objection was made to the recital of the statute in these prayers. It does not seem to us that this could have prejudiced the defendants. as it shows that the pole could be lawfully placed in the highway provided it was not so located as to injuriously incommode public travel. The prayers are said to be not clear as to whether the fact that the evening was too dark for the plaintiff to see the pole was submitted to the finding of the jury or was assumed as proven. This fact was plainly left to the jury to ascertain from the evidence. It was objected also that the instructions were not proper on this point because they do not refer to the duty of the plaintiff to look for the pole. The jury were told that the plaintiff's recovery depended in part upon a finding that he was at the time of the accident exercising ordinary care and prudence. This was all that the defendants could reasonably require of the instructions in this respect upon the evidence and issue here presented.

The objections just noted were made generally to the prayers we have last considered, but there were also special exceptions filed and the grounds assigned were that there was no evidence to support the theory of the prayers that the pole was in a dangerous position, or that the lazy board came in contact with the pole, or that the driver of the team was using ordinary care and prudence at the time of the accident. These exceptions were properly overruled. The first

ground has already been discussed.   As to the second the
evidence shows that the plaintiff was seated in the usual way
on the lazy board and that his knee was caught between the
board and the pole, and for all the essential purposes of the
case a collision between the board and the pole was sufficiently
proven.   In reference to the theory of the prayer as to the
care of the driver it is only necessary to say that the evidence
does not show him to have been the agent or servant of the
plaintiff, but proves on the contrary that both were in the
service of the plaintiff's father, and hence there was no
occasion to qualify the right of the plaintiff's recovery in the
way just indicated, since he would not be bound by the
driver's negligence even if it had been established by the
testimony.   *P., W. & B. R. R. Co.* v. *Hogeland*, 66 Md. 164;
*B. & O. R. R. Co.* v. *Strunz,* 79 Md. 335; *United Rys. Co.*
v. *Biedler,* 98 Md. 564; *Capital Traction Co.* v. *Contner,*
*ante,* p. 78.

All of the questions as to the prayers having now been
considered, we will dispose of the exceptions relating to the
admissibility of evidence.   The first of these was reserved
to the action of the Court in sustaining an objection to proof
offered to show the location of a fence, which had been
erected sometime after the accident and before the trial, along
the same side of the road as the pole to which inquiry was
being directed.   This information was subsequently intro-
duced into the case by another witness without objection or
contradiction, and as the defendants thus obtained the full
benefit of the proof, we need not consider its competency.
There was no reversible error in this ruling.

The second, third, fourth and sixth exceptions refer to
questions of fact as to which there was no dispute in the
case and they need not be discussed.

From the fifth bill of exceptions it appears that the driver
of the wagon on which the plaintiff was riding when injured
was called by the plaintiff, and having testified that he had
been summoned as a witness on that side of the case and had

afterwards been in communication with the defendant tele-
graph company, was asked who had paid his expenses in
attending the trial. An objection to this question was over-
ruled and the witness answered that a Postal Telegraph
Company official had paid his expenses. He was then
excused without further examination and gave no other testi-
mony at any stage of the case. The plaintiff obviously
adopted this as an effective method of explaining his omis-
sion to interrogate the witness as to the material facts. If
the telegraph company did in fact make such an arrangement
with a witness summoned for the plaintiff, and thus induce
a natural hesitation upon his part to rely upon the witness'
testimony, the company should not complain of the proof of
its conduct as accounting for the plaintiff's failure to avail
himself of what might have been regarded as an important
source of evidence.

The seventh exception is covered by the discussion of one
of the grounds of special exception to the plaintiff's prayers.
The ruling on the eighth exception was correct, but as the
answer to the question objected to was entirely favorable to
the defendants, no further reference to the subject is neces-
sary. An exception was reserved to the overruling of a
motion to strike out testimony as to the location of the pole
in reference to the traveled way as being at variance with
the averment of the declaration. We have discovered no
support in the record for this objection. There are no other
exceptions reserved for our consideration and we find no
reversible error in any of the rulings.

*Judgment affirmed, with costs.*