### JAFEK v. PUBLIC SERVICE CO. OF OKLAHOMA.

No. 27939. May 24, 1938.

J. Wood Glass, L. C. Colter, and Glenn. H. Chappell, for plaintiff in error.

V. E. McInnis, James H. Ross, and Sullivan G. Ashby, for defendant in error.

GIBSON, J. The only question presented here is whether the court erred in sustaining a demurrer to the evidence of plaintiff and in rendering judgment for the defendant in a personal injury action, based on the alleged negligence of the Public Service Company of Oklahoma in maintaining an electric light pole along federal highway No. 60 in the city of Nowata, Okla.

The accident, in which plaintiff was seriously injured, occurred while he was riding with F. W. Brown, and was returning from a short trip out of town. It seems that there is a reverse curve on this highway near the edge of town near where the highway is entered by Hill street from the south. What happened perhaps was best stated by the driver of the car.

Mr. Brown testified in substance that he invited plaintiff to ride with him to listen

to a new radio in his car. Plaintiff accepted, and after drinking two bottles of beer apiece they drove to Alluwe and back. As they were coming onto this reverse curve at the edge of town at 40 miles per hour, a car traveling 15 or 20 miles per hour showed up from the left, on Hill street, and stopped immediately in front, within 18 steps.

Brown expected the car to stop at the highway. "I figured on cutting in behind," he said, "but was afraid they, would meet me. I didn't have time to think. I had to make up my mind one way or the other and stay with it." "Q. You turned to the north of them? A. Yes, because it looked like a clear shot through. Q. Then did you run into this pole? A. Yes, sir." He declared he did not put on his brakes because of loose gravel.

The pole, he said, was in a ditch along the road, about 8 or 10 feet east of a six-inch wooden culvert that is about 45 feet long. The pole, he thought, was nearer the shoulder than the center of the ditch, and the shoulder was narrow at the time. The hub of the wheel struck the pole. Both Brown and his passenger seemed to have been knocked unconscious when their car rolled over after striking the pole.

The plaintiff himself threw no light on the accident. He testified that he did not pay any attention to the curve, that he was looking south and east at the scenery and "that's the last thing that I remember coming in. * * * The first thing I knew was when I woke up in the hospital sometime next morning."

Plaintiff introduced the county surveyor, who had made a map of the location, and also other witnesses who testified as to photographs taken at the scene of the accident. In conjunction with these, witnesses were offered who had given the surveyor and photographers the location of the pole, which had been so shattered by the blow that it was removed.

The evidence of the surveyor, corroborated by the photographs, was to the effect that the pole stood in the ditch about four feet from the edge of the shoulder; that the ditch was about 10 feet wide and 18 inches below the top of the black top surface of the road; that the pole was not in that part of the roadway used for travel.

We are cited to the decisions which hold that a case should go to the jury when there is any evidence tending to show negligence. Cline v. Butts, 167 Okla. 378, 29 P.2d 777. We are also referred to decisions which hold that contributory negligence is a jury ques-

tion, and to cases relating to concurrent negligence. Sections 10056 and 10057, O. S. 1931 (69 Okla. St. Ann. secs. 4 and 5), are also quoted. They relate to use of public highways by public service corporations, and provide that poles shall be erected, placed, constructed and maintained so as not to incommode or endanger the public in the use of its roads, highways and thoroughfares, and that such corporations shall not exercise the rights granted so as to interfere with the free and ordinary use of public highways.

It is apparent at once from these statutes that those driving vehicles on highways are not entitled to use of the entire highway from property line to property line. Here the state and federal government constructed a roadway with a "black top" for regular vehicular travel with gravel shoulders outside of the "black top." The gravel, of course, was not for ordinary driving. But the pole was 4 feet beyond this shoulder in a ditch, shallow, it is true, but a ditch nevertheless. The question then is, Should a reasonable person have foreseen that the location of such pole would, as a natural consequence, cause an injury? Oklahoma Gas & Electric Co. v. Wilson, 172 Okla. 540, 45 P.2d 750.

It is not a jury question when there is no evidence reasonably tending to show negligence on the part of the defendant. A., T. & S. F. Ry. Co. v. Phillips, 158 Okla. 141, 12 P.2d 908.

We do not see how it could reasonably have been supposed that a person driving an automobile along the highway would drive clear off the shoulder and along the ditch. The vehicle driver is not entitled to use of the ditch.

"A user of vehicles is not, as a matter of law, entitled to the entire highway from property line to property line. The highway not only serves the needs of the traveling public, but may also lawfully serve the public by furnishing the public the conveniences afforded by public utility companies. * * *

"'* * * As between the traveling public and the company erecting this post, all that could be required was that the location be fixed at a "safe and convenient distance beyond the margin of the road as used." When an effort is made to hold it liable for improperly locating its poles, the question is, "Is the safety of travel endangered?" * * *'

"In the instant case 'the road as made and used' for vehicular travel by the public was the paved road." Clayborn v. Tennessee Electric Power Co (Tenn. App.) 101 S.W.2d 492.

See Mississippi Power Co. v. Sellers (Miss.) 113 So. 594.

The cases of Postal Telegraph Cable Co. v. Young (Ky.) 189 S. W. 707, and Kentucky Utilities Co. v. Sapp's Adm'r (Ky.) 60 S. W.2d 976, are cited. In the former case, however, the court said that the evidence tended to show that the pole was placed so near to the traveled portion of the highway as to obstruct public travel thereon. (There was no evidence of a ditch and the distance was but slightly more than one foot.) In the latter case the evidence was conflicting, the distance being fixed at 12, 8, 5, or 4 inches or even no intervening distance from the shoulder. Both of these cases, and others, are discussed in the later case of Southern Bell Telephone & Telegraph Co. v. Edwards (Ky.) 70 S. W. 2d 1. There the Kentucky court said:

"In all of those cases, the obstructions, if not actually on the surfaced portion of the highway, were in very close proximity thereto and on the earth or metal shoulder which may be and often is used by the traveling public as a matter of choice or necessity. * * *

"Reasoning from the controlling principles running through the foregoing and other cases * * * we conceive the rule to be that, in order to render the utility company liable in cases of this character, it is incumbent upon the complaining party to show that the pole alleged to have caused the injuries was erected and maintained upon or so near the highway as to interfere with or obstruct the ordinary use thereof by the traveling public."

Certainly the pole here could not by any reason be said to have, interfered with or obstructed the **ordinary use by the traveling public.** We cannot assume that the traveling public ordinarily drives off the shoulder or along the ditch at the side of the road.

In the cited case of Phelps v. Howard County (Md.) 82 Atl. 1058, it was alleged that the pole stood so near the traveled road that it would collide with the "lazy board" of a wagon while the **wagon was in the traveled portion of the road.** In Coan v. Public Service Electric & Gas Co. (N. J L.) 142 Atl. 665, the question was said to be one for the jury where the pole "was erected in the roadway; in other words, in that part of the highway which was devoted to vehicular traffic." We do not see how these cases aid the plaintiff. As was said in Kegley v. Appalachian Electric Power Co. (Va.) 175 S. E. 731: "In this age of automobiles, the prevalent idea is that they will be operated ordinarily upon the usable portion of the highway." And as said by this court:

"The defendant could not anticipate that the plaintiff would quit the paved road and beaten way of travel for the course he traveled. The defendant had the right to believe that a single autoist would find the 18-foot paved road sufficient width to accommodate him as a way for travel." Schaff v. Edwards, 111 Okla. 12, 237 P. 620.

In that case an automobile left the highway and ran into a railway car left by the defendant near the highway. This court further said:

"The plaintiff charges that his injury was the result of the negligence of the defendant in placing and leaving the coal car where it stood at the time of the collision. The record shows that the cause of the collision was the inability, or failure, of the plaintiff to guide his automobile along the beaten way of travel ordinarily pursued by persons using the highway."

Here the plaintiff seems to have been exercising no care for his own safety. He permitted without any protest the driver of the car in which he was riding to make a curve at a high rate of speed coming into town where cross streets must be apparent, and according to his own story was paying no attention whatever to the road. But, aside from that, the accident here resulted from the combined acts of the driver of the car and of the women who suddenly drove into and across the highway; the pole merely furnished the condition by which the injury was made possible. In such case the pole cannot be said to be the proximate cause of the injury.

"If the negligence complained of merely furnished a condition by which the injury was possible and a subsequent independent act caused the injury, the existence of such condition is not the proximate cause of the injury." Munroe v. Schoenfeld & Hunter Drilling Co., 178 Okla. 149, 61 P.2d 1045.

From an examination of the whole record, it is clear that the trial court was right. The judgment is, therefore, affirmed.

BAYLESS, V. C. J., and PHELPS, CORN, and HURST, JJ., concur.