CADDO ELECTRIC COOPERATIVE, a Corporation, Plaintiff in Error,

v.

Jerald BOLLINGER, a minor, by and through his father and next friend, C. E. Bollinger, Defendant In Error.

No. 36396.

Supreme Court of Oklahoma.

June 7, 1955.

Pierce, Mock & Duncan, Oklahoma City, for plaintiff in error.

Porta & Weaver, El Reno, for defendant in error.

CORN, Justice.

An extended statement of the pleadings and evidence is unnecessary for consideration of the question presented by this appeal. About a month prior to the accident hereinafter described defendant had constructed an electric transmission line along a country road near plaintiff's home in Canadian county. At a point where this line made a 30 degree turn the pole was supported by two guy wires anchored in the right of way of the road. These wires had no guards and were not easily visible. Plaintiff, in company with four youthful companions, was horseback riding along the road. His horse ran into the exposed guy wires and fell backward upon plaintiff,

causing severe and permanent injuries. Plaintiff, a minor who sued by and through his father as next friend, brought this action to recover damages for the injuries so received. No issue is presented on appeal relative to the nature and extent thereof.

The petition charged defendant with failure to use proper and customary care in building the line, in that ordinary care required erection of an anchoring pole on the opposite side of the road, rather than by anchoring the pole by guy wires placed in the right of way so as to be exposed to traffic. Plaintiff further charged defendant with failure to comply with provisions of 18 O.S.1951 § 437.2, which provides that all electrical construction and maintenance shall comply with requirements of the National Electrical Safety Code, and particularly paragraph E, section 282, which states:

> "Guy Guards: The ground end of all guy wires attached to ground anchors exposed to traffic shall be provided with a substantial and conspicuous wood or metal guard not less than ·8 feet long.

> . "Recommendation: It is recommend- . ·ed that in exposed or poorly lighted locations, such guards be painted white or some other conspicuous color."

Defendant answered by general denial, and specifically denied improper installation of the pole and guy wires. By amendment defendant presented the defenses of contributory negligence and unavoidable casualty.

The evidence showed this was an unimproved country road running north and south, the left (west) boundary being a wooded ditch. The road bed was flat, being graded only occasionally to smooth the ruts, and there was little difference in elevation over the right of way. At the time of the accident the smoothed portion was only of sufficient width to accommodate one lane of vehicular traffic. The area between the east side of the smoothed portion and the right of way line was covered by grass (knee high) and weeds. There was evidence showing the road was traveled regularly for the purposes, and by the usual modes of travel peculiar to any unimproved road in a rural area. And, there was testimony showing that livestock could be, and often were, herded along the road by automobile, the level condition permitting vehicles to be driven over the entire surface of the right of way. Livestock moving along the road generally traveled along the east side because the grassed-over condition made traveling softer and easier.

The day of the accident plaintiff and his companions were riding their horses south down the road. Plaintiff, riding without a saddle, fell behind his companions, who stopped in the vicinity of the guy wires to enable him to catch up. Plaintiff put his horse into a lope, and turned off the smoothed, packed part of the road onto the grass. Just before reaching his companions one of them shouted a warning, but this came too late. The horse struck the guy wires and fell backward upon him, causing serious injuries. Plaintiff knew the guy wires were anchored in the road, but there was nothing to attract his attention, or enable him to see and avoid running into the wires.

A retired employe of an electric power company with experience in construction of electric lines was a witness for plaintiff. He testified that in building a turn such as defendant constructed in this line the proper and customary manner would be to put a pole on the opposite side of the road and anchor the line to such pole by an overhead guy wire. He further testified custom and usage in the industry required use of guards on guy wires exposed to traffic.

One Bryan, defendant's manager when the line in question was constructed, was defendant's principal witness. He testified defendant's installations were in accord with requirements of the Safety Code, quoted heretofore; he was familiar with installations of other public utilities and had occasion to observe their lines, and there were many lines upon which guy guards were not installed. Defendant also introduced in evidence photographic exhibits of other installations in the general area which had no guy wire guards.

The jury returned a verdict for plaintiff ($8,500.) upon which the judgment appealed from was rendered.

Defendant argues two propositions as grounds for reversal of this judgment, both of which are based upon the asserted insufficiency of the evidence to present a question of fact for the jury's determination. Under the first proposition defendant urges that, although the guy wires were anchored in the right of way, there was no evidence of general and regular use of the road, and thus the evidence was insufficient to establish that these wires were exposed to traffic. To support this argument defendant relies upon Roberts v. Wisconsin Tel. Co., 77 Wis. 589, 46 N.W. 800; Phelps v. Wisconsin Tel. Co., 244 Wis. 57, 11 N.W.2d 667; Shawnee Gas & Electric Co. v. Griffith, 96 Okl. 261, 222 P. 235, and Jafek v. Public Service Co., 183 Okl. 32, 79 P.2d 813.

We do not believe the law as announced in the cited cases can be considered as controlling herein, in view of the varied factual situations therein revealed. In the Roberts case, supra, the alleged obstruction was a clearly visible telephone pole, and the plaintiff's injury resulted from being thrown against such pole while alighting from his buggy, by reason of his team becoming frightened by an independent agency.

In the Phelps case, supra, plaintiff's decedent was crushed between a telephone guy wire and the seat of a grader when he backed into the guy wire, upon which there was no guard, at a point where the street apparently was not completed. However, the guy wire was so located that, had the street been completed and a curb installed, the guy wire would have been between the sidewalk and the street curb. The court found the evidence insufficient to show the guy wire was located at a point exposed to public travel.

The Griffith case, supra, likewise involved an unguarded guy wire anchored between the sidewalk and the street. However, the evidence disclosed a long continued custom of church attendants using this particular area of the parking in traveling between the church and their conveyances. And, in that case this court pointed out the protection or guards to be used depended upon location of the guy wire and the extent and purpose for which the adjacent area commonly was used. On appeal this court upheld a judgment for plaintiff rendered upon a jury verdict holding, in effect, that there had been a failure to exercise reasonable care for the safety of persons under the circumstances shown.

The complete factual dissimilarity between the present situation and that upon which the rules announced in the Jafek case, supra, are based, clearly reflects the inapplicability of that case herein.

Defendant seeks to apply the rules in the cited cases, and upon such basis concludes that: (1) Although the guy wires were unguarded they were not exposed to traffic, since this was an area of "occasional use"; (2) requirements of the Safety Code neither contemplated nor intended to embrace guy wires in locations such as appear herein, since this would require all guy wires to be guarded; (3) since the evidence disclosed only sporadic use of the road and adjacent right of way such circumstances presented no question of fact for the jury.

The argument thus appears to be predicated solely upon the proposition that, although there was failure to comply with statutory requirements, liability cannot attach except in those instances where defendant's acts or omissions occur in areas of constant travel. The essence of such argument is that the question of the existence of negligence in the failure to discharge a duty imposed by statute is to be measured solely by the amount of travel at a given point, rather than by what would be ordinary and reasonable care under all the circumstances.

This was a well defined and generally used public road in an inhabited rural neighborhood. The common use by inhabitants of the area for the usual and customary purposes of the average, unimproved country road, over a great many years was established. The physical facts sufficiently indicated this, as well as making it apparent that in some instances the

nature of the travel thereon would require use of the grassed-over area to the east of the smoothed portion of the road. It is recognized generally, that one traveling upon a highway is entitled to assume his way is reasonably safe. And, although any person is required to use reasonable care and caution for his own safety, he is neither required nor expected to search for obstructions or dangers. See generally 25 Am.Jur., Highways, Sec. 342, et seq.

In 18 Am.Jur., Sec. 94, the general rule is stated:

"An electric company maintaining wires in or over public streets or highways must use commensurate care in their erection, inspection, and repair to the end that no injury shall be done to travelers and that the way shall be substantially as safe as it was before such occupation. The company is bound to erect and maintain them in a safe condition so they will not become nuisances or endanger the safety of the traveling public. It must provide such safeguards against danger as are best known and most extensively used and all necessary protection to avoid casualties which may be reasonably expected."

In Logan v. Empire District Electric Co., 99 Kan. 381, 161 P. 659, 661, L.R.A. 1917E, 258, cited by plaintiff, that court expressly approved the following instructions:

" 'In determining the duty and liability of the defendant the term "travel" is not to be given a narrow and restricted meaning, but should be held to embrace such a legitimate use of the road as may be made by persons having occasion to pass over them while engaged in any of the duties of life in that section or community.' "

■ It is our opinion that the test for measuring liability was well stated, and announced the rule applicable to such cases. Measured by this rule it is clear defendant knew, or should have known, this particular road was, and would be, regularly used by the inhabitants of the area for any and all purposes connected with the daily requirements of farm life. And, it should have been equally apparent, in view of the topography of the right of way and the physical boundaries, that reasonable and ordinary use of the road probably would necessitate the movement of men, animals or vehicles along the east side thereof where the guy wires were located. These circumstances, when considered together, certainly were sufficient to require submission to the jury of the question whether defendant, having failed to install the required guy wire guards, had used the degree of care commensurate with the circumstances in erection of this installation.

■ Defendant further contends that the evidence establishes the proximate cause of the accident was plaintiff's failure to watch where he was going; and, that there was no evidence defendant's failure to install the required guards caused the accident.

It is argued that the guy wires were visible, but because plaintiff was riding bent over and with his face to the right of the horse's neck he was unable to see the wires; and, that there was no evidence that plaintiff could not have seen the wires had he been looking ahead. The basis of such argument is the negative proposition that, there being no evidence plaintiff could not see the guy wires, it must follow that had he been looking he would have seen and avoided them even though they were unguarded. Thus defendant insists the proximate cause of the accident was plaintiff's failure to keep a lookout, rather than its own failure to install the required guards.

■ The evidence relative to the surrounding physical circumstances was sufficient to present the question whether the location and construction of the guy wires created the risk that same might cause injury during the general use of the road. Thus whether the location of the guy wires and the failure to install the required safeguards was the proximate cause of the accident presented a question upon which reasonable men might differ. Spicers, Inc., v. Rudd, 199 Okl. 576, 188 P.2d 692; McAlester Corp. v. Wheeler, 205 Okl. 446, 239 P.2d 409. The matter properly was submitted for the jury's determination.

Defendant's further argument that the accident resulted from plaintiff's failure to see the guy wires, rather than from defendant's failure to install proper guards, in reality asserts the accident resulted from contributory negligence. This issue was raised by the pleadings. The evidence relevant to visibility of the guy wires and the manner in which plaintiff was riding at the time, was sufficient to cause the trial court to submit this question to the jury under appropriate instructions. The issue necessarily had to be determined by the jury, and by their verdict the issue was resolved against defendant. Such determination is conclusive on appeal. Rowley v. Foster, 208 Okl. 284, 255 P.2d 501.

Judgment affirmed.

JOHNSON, C. J., WILLIAMS, V. C. J., and WELCH, ARNOLD, HALLEY, BLACKBIRD and JACKSON, JJ., concur.