2000 OK CIV APP 135

**Chris L. BLACKMER, Plaintiff/Appellee,**

v.

**COOKSON HILLS ELECTRIC COOP., INC., Defendant/Appellant.**

**No. 92451.**

Court of Civil Appeals of Oklahoma, Division No. 2.

Nov. 14, 2000.

---

Michael J. Edwards, Tulsa, OK, for Appellant.

*OPINION*

TAYLOR, J.

¶1 Defendant, Cookson Hills Electric Cooperative, appeals a judgment of the trial court in favor of Plaintiff, Chris L. Blackmer. The issue in this appeal from a small claims judgment is whether the judgment is supported by competent evidence. Having reviewed the record and applicable law, we find that it is and affirm.

¶2 Plaintiff brought this action to recover for damage to his vehicle resulting from a collision with a utility pole owned and maintained by Defendant. On January 5, 1998, Plaintiff was traveling north on a dirt road maintained by Sequoyah County. As part of its maintenance, the county grades the road approximately once a month. Above the road is an electrical line, owned by Defendant and supported by utility poles on each side of the road. The poles have been in the same location for at least 25 years. As he was driving, Plaintiff moved his vehicle to the right to allow an oncoming vehicle to pass. In doing so, he collided with the utility pole located on the right side of the road. Plaintiff brought this action to recover for damage to his vehicle. Defendant counterclaimed for damage to its pole.

¶3 At a nonjury trial held on October 23, 1998, and continued on November 6, 1998, Plaintiff presented photographs, taken soon after the day of the collision, showing the right boundary of the road was approximately one to three feet[1] beyond the pole. In other words, the photographs showed that the pole was located on the roadway. Defendant, on the other hand, presented photographs taken approximately two weeks before the hearing, showing that the right edge of the roadway was located one to three feet inside the location of the pole. In other words, at the time of Defendant's photographs, the pole was outside the roadway.

¶4 The trial judge inspected the roadway on November 6, 1998. He determined that,

---

1. We use ranges of distance in this opinion because the journal entry of judgment and the narrative statement, both signed by the trial court, are inconsistent. For example, the trial court stated in the journal entry of judgment that Plaintiff's photographs show the right boundary of the road as approximately three feet beyond the pole, while in the narrative statement, the trial court said the boundary of the road was one foot beyond the pole. Nevertheless, the pole appears to have either been on or very close to the roadway.

at the point of the accident, the roadway was 27 feet wide, not 33 feet wide as required by law. He further determined that the pole was within 16½ feet of the center of the road bed—in other words, it was within an area that would have included the roadway had the roadway been the required 33 feet.

¶5 The photographs, the court's conclusions from its inspection of the road, and other evidence presented at trial show that the width of the road and location of the road's edge changed depending on the county's grading. Thus, as determined by the court, "the electrical pole may be within the road or it may be outside the road depending on the particular day that it is inspected." The trial court granted judgment to Plaintiff and awarded damages of $3,678.22.

■ ¶6 Defendant appeals. In reviewing a judgment from a non-jury trial in a small claims action, we will not disturb the trial court's findings if there is any competent evidence to support them. *Soldan v. Stone Video*, 1999 OK 66, ¶6, 988 P.2d 1268, 1269.

■ ¶7 Public service corporations owe a duty to the traveling public to erect, place, construct, and maintain utility poles "so as not to incommode or endanger the public in the use of its roads, highways and thoroughfares, and ... shall not exercise the rights granted so as to interfere with the free and ordinary use of public highways." *Jafek v. Public Serv. Co. of Okla.*, 1938 OK 360, ¶13, 79 P.2d 813, 814. A utility company may be held liable if it " 'erected and maintained' " its utility pole " 'upon or so near the highway as to interfere with or obstruct the ordinary use thereof by the traveling public.' " *Id.* at ¶18, 79 P.2d at 815 (quoting *Southern Bell Tel. & Tel. Co. v. Edwards*, 253 Ky. 727, 70 S.W.2d 1 (1934)). A utility company that maintains "wires in or over public streets ... must use commensurate care in their erec-

tion, inspection, and repair to the end that no injury shall be done to travelers and that the way shall be substantially as safe as it was before such occupation." *Caddo Elec. Coop. v. Bollinger*, 1955 OK 170, ¶17, 285 P.2d 200, 204 (quoting 18 Am.Jur. § 94). "The company is bound to erect and maintain them in a safe condition so they will not become nuisances or endanger the safety of the traveling public." *Id.* Whether a utility company has exercised reasonable care in this regard generally presents a question of fact to be determined by the trier of fact. *Id.* at ¶19, 285 P.2d at 204. *See also Oklahoma Natural Gas Co. v. Smith*, 1941 OK 387, 119 P.2d 844 (defendant gas company was liable for injuries that plaintiff suffered when the vehicle in which he was riding struck a gate stem that was exposed on the roadway).[2]

■ ¶8 In the instant case, Plaintiff was merely moving to the right hand side to let a car pass when he struck the utility pole. He presented evidence, including testimony and photographs, from which it may be inferred that the utility pole was on the roadway at the time that he hit it. Furthermore, Defendant presented evidence showing that, several months after the collision, the pole was very close to the roadway. The trial court's inspection during trial also revealed that the pole was very close to the roadway and was located where the roadway would have been had the road been as wide as required. This evidence creates a question of fact as to whether Defendant erected or maintained its utility pole "upon or so near the highway as to interfere with or obstruct" Plaintiff's use of the roadway. It was within the trial court's province to weigh the evidence and decide in favor of Plaintiff. Because the trial court's decision is supported by competent evidence, we will not reverse it.

2. Other jurisdictions have also held utility companies liable when they erected or maintained utility poles on the roadway or in close proximity to the roadway. For example, see *Southwestern Pub. Serv. Co. v. Cole*, 428 S.W.2d 136 (Tex.Civ. App.1968) (utility company's pole located partly on traveled portion of roadway; foreseeable that someone would strike the pole); *Earp v. Phelps*, 120 Md. 282, 87 A. 806 (1913) (utility company's pole located on the graded edge of the roadway; even though pole was not on roadway it "was so near [the traveled] part of the road as to be a source of danger"); *Scheel v. Tremblay*, 226 Pa.Super. 45, 312 A.2d 45 (1973) (utility pole located within 10 inches of the roadway); *Ohio Bell Tel. Co. v. Lung*, 129 Ohio St. 505, 196 N.E. 371 (Ohio 35) (pole located 5.1 feet from brick pavement on an improved portion of the highway which the driving public used at times).

¶ 9 Defendant argues that it was not foreseeable "that the roads in Sequoyah County would move around, even to the extent of encompassing and encroaching upon the power line easement." We disagree. In *Oklahoma Natural Gas Co. v. Smith*, 1941 OK 387, 119 P.2d 844, the defendant maintained a gas line under the roadway. A gate stem on the line was exposed on the roadway. The plaintiff was injured when the vehicle in which he was riding struck the gate stem. The defendant argued that it could not be held liable for the plaintiff's injuries because it had only owned the line for two years, and was not aware of the existence of the gate stem until after the accident. The supreme court rejected the defendant's argument, finding that the defendant had a duty to see that its property was constructed and maintained so as not to constitute a hazard to travelers. The court further held, "It was the duty of the defendant during [the period of its ownership] to acquaint itself with the property which it had acquired and to discover and eliminate any hazard which a complete inspection of the property would have disclosed." *Id.* at ¶ 8, 119 P.2d at 846. *See also Ross v. Otis Elevator Co.*, 1975 OK 105, ¶ 8, 539 P.2d 731, 733 (a landowner may be liable for a condition it did not create where "the condition had existed for such length of time that in exercise of ordinary care he should have known of it").

¶ 10 In the instant case, the location of the edge of the roadway varied often due to the grading of the road. The county had been maintaining the road for at least 15 years, including grading it on a monthly basis. Between the time of the collision and the trial, approximately nine months, the edge of the road in relation to the pole was in at least three different locations (as evidenced by Plaintiff and Defendant's photographs and the court's inspection). The edge of the road changed frequently enough and for a long enough period of time that Defendant had a duty to see to it that the utility pole was maintained so as not to constitute a hazard to travelers on the road. Furthermore, it was foreseeable, considering the length of time that the condition was maintained, that the location of the pole on or very close to the roadway would constitute a hazard to people driving on the narrow country road.

¶ 11 Defendant also argues that it cannot be held liable because it did not have "dominion" or "control" over the road. We agree that Defendant did not maintain the roadway and did not control its width. However, Defendant did have a duty to keep its utility pole from presenting a hazard to the traveling public. Even though it did not control the grading of the road, it did control the location of the pole, which was very close to the road. Defendant does not argue that it could not have moved the pole so that it would not be so close to the road that it constituted a hazard.

¶ 12 We also disagree with Defendant's argument that "any alleged actions or inactions of [Defendant] merely created a condition rather than a cause." Defendant, in effect, argues that the accident was caused by one of two intervening acts: (1) by Plaintiff's own negligence or (2) by the county's negligence in failing to properly "prepare and grade the road."

¶ 13 "For an intervenor's act to become a '*supervening cause*' and cut off possible liability for the original negligence, it must (1) be independent of the primary negligence, (2) be adequate *of itself* to bring about the injury complained of and (3) not be a reasonably foreseeable event." *Lockhart v. Loosen*, 1997 OK 103, ¶ 10, 943 P.2d 1074, 1079 (footnote omitted). If the intervening act is a reasonably foreseeable consequence of the primary negligence, the original wrongdoer is not relieved of liability. *Id.* Furthermore, if the primary act of negligence operates concurrently with the secondary act of negligence, "so that damage is the result of both causes acting in concert—each act may be regarded as the proximate cause and the wrongdoers will be jointly and severally liable for the plaintiff's compensable harm." *Id.* (footnote omitted). Finally, the questions of foreseeable consequences and foreseeable acts are questions of fact. *Id.* at ¶ 11, 943 P.2d at 1079–80.[3]

3. Other jurisdictions have rejected the condition- versus-cause argument in similar cases. *See e.g.,*

¶ 14 In the case at bar, the primary negligence was Defendant's placement and maintenance of its utility pole in close proximity to the roadway. The alleged secondary or intervening negligence was either Plaintiff's contributory negligence or the county's negligence in grading the road. We must determine whether either one of the alleged intervening acts constituted a supervening cause that cut off liability for Defendant's primary negligence as a matter of law. We find that neither act constituted such a supervening cause.

¶ 15 With regard to Plaintiff's contributory negligence, we find that, if Plaintiff was contributorily negligent[4], any such negligence was not adequate of itself to bring about the collision. Plaintiff testified that he was merely moving over to allow an oncoming vehicle to pass. The question of whether the collision would have occurred if the utility pole had not been located either on the roadway or within close proximity to the roadway is one of fact. Furthermore, the foreseeability of Plaintiff's moving to the right on the narrow country road to allow an oncoming vehicle to pass is a question of fact. Thus, a question of fact existed as to whether any contributory negligence by Plaintiff was a supervening cause. *See Caddo Electric,* 1955 OK 170, ¶ 23, 285 P.2d at 205.

¶ 16 With regard to county's negligence, we find a question of fact exists as to whether any negligence of county in grading the road was adequate of itself to bring about the injury. If Defendant had not placed and maintained its pole so close to the roadway, the county could not have graded so close to the pole as to cause the pole to be located on the roadway or so close to the roadway that it became a dangerous condition. Furthermore, a question of fact exists as to whether it was foreseeable that, in placing and maintaining the pole so close to the roadway, the party responsible for maintaining the roadway could, and probably would, grade so close to the pole as to create a dangerous condition. The acts of Defendant and the county may be viewed as concurrent acts for which both may be liable.

¶ 17 Defendant next argues that the trial court improperly based its decision on its inspection of the road several months after the collision. We reject this argument. First, we note Defendant relied on similar evidence when it presented photographs taken shortly before the trial and shortly before the trial court's inspection. Second, the trial court did not rely solely on its own inspection—it also considered Plaintiff's and Defendant's photographs, Plaintiff's description of what happened, and evidence of the condition of the roadway. Third, there is no indication in the record that Defendant objected to the court's inspection or its reliance on its findings. Finally, the decision whether to inspect the scene of an accident is within the trial court's discretion, *Tuck v. Buller,* 1957 OK 88, 311 P.2d 212, and the admission or rejection of evidence is within the trial court's discretion. *Holm–Waddle v. William D. Hawley, M.D., Inc.,* 1998 OK 53, 967 P.2d 1180. We do not find a clear abuse of discretion here and, therefore, will not reverse.

¶ 18 Defendant's final argument is that the statute of repose bars Plaintiff's recovery. There is nothing in the record on appeal showing that Defendant presented this argument to the trial court. This court

---

*Ohio Bell Tel. Co. v. Lung,* 129 Ohio St. 505, 196 N.E. 371 (1935) (where utility pole was 5.1 feet from brick pavement but still on traveled portion of the highway, driver's negligence was not intervening cause; rather, acts of utility company and driver were concurrent causes); *Scheel v. Tremblay,* 226 Pa.Super. 45, 312 A.2d 45 (1973) (where pole was 10 inches from roadway, drivers' negligence was concurrent, not intervening cause); *c.f. Phelps v. Board of County Comm'rs of Howard County,* 117 Md. 175, 82 A. 1058 (1912), and *Earp v. Phelps,* 120 Md. 282, 87 A. 806 (1913) (where road had been graded to the utility pole, both county and utility company could be liable).

4. There is little to no evidence in the record indicating that Plaintiff was contributorily negligent. In the face of Plaintiff's testimony that he was merely moving to the right to allow an oncoming vehicle to pass and the evidence that the pole was on the roadway, Defendant merely argued the pole was "clearly visible" and had been "in the same location for many years," and that Plaintiff could have avoided it. At a minimum, a question of fact was presented by the evidence.

will not address on appeal issues that were not first presented to the trial court. *Bivins v. State ex rel. Okla. Mem. Hosp.*, 1996 OK 5, 917 P.2d 456; *Bane v. Anderson, Bryant & Co.*, 1989 OK 140, 786 P.2d 1230.

¶19 The judgment of the trial court is supported by competent evidence and is AFFIRMED.

¶20 RAPP, P.J., and COLBERT, J., concur.