GRINN v. OKLAHOMA EMPLOYMENT SECURITY COMMISSION
2022 OK CIV APP 40
Case Number: 119727
Decided: 11/04/2022
Mandate Issued: 11/30/2022
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2022 OK CIV APP 40, __ P.3d __

 

MATTHEW GRINN, Plaintiff/Appellant,
v.
OKLAHOMA EMPLOYMENT SECURITY COMMISSION and BOARD OF REVIEW OF OKLAHOMA EMPLOYMENT SECURITY COMMISSION, Defendants/Appellees,
and
R.B. STEWART PETROLEUM PRODUCTS, INC., Nominal Party/Appellee

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA

HONORABLE ANTHONY L. BONNER, TRIAL JUDGE

REVERSED AND REMANDED

Leah M. Roper, THE CENTER FOR EMPLOYMENT LAW, Oklahoma City, Oklahoma and
Katherine M. Bushnell, Nicoma Park, Oklahoma, for Plaintiff/Appellant

GREGORY C. BLACKWELL, JUDGE:

¶1 Matthew Grinn appeals a decision of the district court affirming a ruling of the Oklahoma Employment Security Commission Board of Review (OESC or the commission) denying him unemployment benefits on the grounds that he was discharged for "misconduct" pursuant to 40 O.S.Supp.2014, § 2-406

BACKGROUND

¶2 Grinn was employed by R.B. Stewart Petroleum Products, Inc.

¶3 For reasons that are ultimately unclear from the substantial record below, having avoided the danger, Grinn then "stuck his right hand up in the air and made a fist and basically drew it back towards his hip in the motion of 'yes!'" Welch was unhappy with this behavior and chided Grinn that there was "nothing funny" about a "harsh incident." Grinn allegedly replied that his reaction was "just sarcasm" or "humor."

¶4 Welch related the incident to supervisor Pogue some twenty minutes later, who reviewed a cab video of the allegedly offending "fist pump." After consultation, Pogue decided to dismiss Grinn. Grinn was told at the time of his dismissal that he had been dismissed for "failure to make progress in training." Grinn applied for, and initially received, unemployment benefits. The award specifically stated that "no evidence of misconduct has been shown."

¶5 R.B. Stewart

¶6 R.B. Stewart submitted three passages from its policy manuals to the appellate tribunal detailing the policies it alleged Grinn had violated, and thereby, committed misconduct pursuant to § 2-406. Because these passages are the basis of R.B. Stewart's case, we will reproduce them in full. The first specifically relates to driving safety:

While there are no regulatory requirements that mandate the existence of a defensive driving policy, R. B. Stewart wants to make sure we have the safest drivers on the road. Underlying the policy is our corporation's strong commitment to safety on the highways. Our goal is to keep our drivers and the motoring public safe.

While operating company vehicles, drivers should always drive in a safe and professional manner. The likelihood of accidents will be minimized and a positive image for the company will be promoted in the eyes of the general public, specifically, our drivers must operate company vehicles in accordance with all Provisions of Part 392 -- Driving of Motor Vehicles of the Federal Motor Carrier Safety Regulations ....

R. 20 (internal section numbers omitted). The second was a more general "safety and integrity" policy statement:

We care about your safety and the safety of all who use our nation's roads. Transportation is an integral part of the successful operational model at R. B. Stewart. We rely on the safe operation of vehicles to deliver products and services to our customers. R.B. Stewart is bound by high ethical standards of honesty and integrity when dealing with the public, employees and customers. We expect honesty and integrity from our employees in all their daily activities.

R. 21. Finally, R.B. Stewart cited its policy on "professionalism."

R. B. Stewart has high expectations of its employees and their performance, particularly when it comes to customer service. Employees must be courteous and respectful when interacting with customers, vendors, and other members of the public while in the course and scope of Company business. Employees should immediately report all witnessed behavior violating this policy to employee's manager.

The Company has the same high expectations with regard to teamwork. Employees are expected to work in a cooperative manner with managers, co-workers, customers and vendors. This policy does not mean that employees cannot disagree with each other or that employees cannot raise issues of concern related to the terms and conditions of their employment. It does, however, mean that employees are expected to work together to complete assigned work efficiently and effectively.

R. B. Stewart cannot anticipate every possible type of activity that would violate its policies and expectations, but there are some general categories of conduct or behavior that employees can anticipate will result in discipline. For example, insubordination, such as refusing to perform assigned work or tasks, will result in discipline. Employees who physically threaten, intimidate or assault a manager, co-worker, customer or vendor are also subject to immediate discipline.

R. B. Stewart expects its employees to be truthful and accurate when reporting business information. Misleading, misrepresenting, omitting, or not telling the whole truth for Company purposes, including falsifying any Company record such as sales records or hours of work, is prohibited.

This policy of professionalism means that while working, employees will be performing Company duties for which they are being paid. Employees may not engage in personal or leisure activities such as reading magazines, books or newspapers, promoting personal business, or sleeping. If an employee has completed all of employee's assigned duties, it is the employee's responsibility to inform the supervisor or manager to seek additional work.

R. 23.

¶7 The appellate tribunal held a telephone hearing at which Grinn appeared pro se and R.B. Stewart appeared through counsel. Grinn and supervisor Pouge testified. The tribunal reversed the initial determination of eligibility and held that Grinn was ineligible for unemployment benefits because "the claimant['s] reaction indicated an indifference to his job duties and breached the claimant's obligation to the employer. Misconduct had been shown and benefits are denied ...."

STANDARD OF REVIEW

¶8 On appeal, "the findings of the Board of Review as to the facts, if supported by evidence, shall be conclusive and the jurisdiction of the court shall be confined to questions of law." 40 O.S. § 2--610(A) (West 2022). The "standard of review on appeal is the same as that of the trial court." Gilchrist v. Board of Review of the Oklahoma Emp't Sec. Comm'n, 2004 OK 4794 P.3d 72Id. Marchant v. Heartland Parts & Servs., Inc., 2015 OK CIV APP 38348 P.3d 225

ANALYSIS

¶9 It is important to define at the outset what this case is and is not about. This case is not about whether R.B. Stewart was permitted to fire Grinn. There is no question that the default rule of employment in Oklahoma remains employment-at-will. Ho v. Tulsa Spine & Specialty Hosp., LLC, 2021 OK 68507 P.3d 673Id. ("The classic statement of the at-will rule is that an employer may discharge an employee for good cause, for no cause or even for cause morally wrong, without being guilty of a legal wrong."). The far more limited question before us is whether Grinn was correctly barred from receiving statutorily-provided-for unemployment benefits after his termination. Because we find that Grinn did not commit "misconduct" under the applicable statutes, we reverse.

¶10 Section 2-406 of the Employment Security Act of 1980 has always required that an employee discharged for "misconduct connected with his last work" be disqualified from receiving unemployment benefits. Prior to 2014, no statutory definition of "misconduct" was provided by § 2-406, and the question was resolved on a case-by-case basis. In 2014, however, the legislature both clarified and limited the acts that constitute statutory "misconduct." 40 O.S.Supp.2014 § 2-406

B. Acts which constitute misconduct under this section shall be limited to the following:

1. Any intentional act or omission by an employee which constitutes a material or substantial breech (sic) of the employee's job duties or responsibilities or obligations pursuant to his or her employment or contract of employment ...

3. Indifference to, breach of, or neglect of the duties required which result in a material or substantial breach of the employee's job duties or responsibilities ...

8. A violation of a policy or rule enacted to ensure orderly and proper job performance or for the safety of self or others.

Id.

¶11 Pursuant to § 2-406(A), it is the employer's burden to demonstrate misconduct. Id. ("If discharged for misconduct, the employer shall have the burden to prove that the employee engaged in misconduct as defined by this section."). The legislature also added a new section to the statute in 2014, § 2-406(C), which provides as follows:

Any misconduct violation as defined in subsection B of this section shall not require a prior warning from the employer. As long as the employee knew, or should have reasonably known, that a rule or policy of the employer was violated, the employee shall not be eligible for benefits.

No published case has interpreted the 2014 changes to § 2-406(B) or the new provisions of § 2-406(C) since their enactment.

¶12 Gestures such as the "fist pump" at issue in this case are not addressed by the statute or the policies that R.B Stewart cites. R.B. Stewart argues, however, that Grinn "knew or reasonably should have known" that this gesture violated the cited "policy of the employer" regarding "professionalism" pursuant to § 2-406(C).

¶13 In this regard, we view the text of Section 2-406(C) as encompassing three categories of "knowledge" that render an employee's violation of a work rule or policy statutory misconduct sufficient to deny benefits. The first is that of clear "wrongdoing." This consists of workplace acts that are so clearly unacceptable that any employee of ordinary cognizance should understand them to constitute misconduct, irrespective of whether they appear in a policy manual or whether the employee has been specifically cautioned not to perform them.malum prohibitum acts). The employee has, or should have, knowledge of these requirements if the employer at least informs the employee that there are mandatory rules and makes them reasonably available to the employee.

¶14 These first two categories are reasonably clear. They place a responsibility on the employee not only to avoid behavior that is obviously misconduct, but also to familiarize him or herself with the noticed and available rules and policies defining job duties and responsibilities. As § 2-406(C) notes, if an employee already knows or should reasonably know of a rule, a warning of the rule is not necessary.

¶15 The uncertainty here lies in the third category of misconduct under § 2-406(C) where the act is neither so transgressive that it obviously constitutes misconduct, nor facially prohibited by any available rule or policy statement. R.B. Stewart argues here that Grinn should have reasonably extrapolated from the broad "professionalism" policy, and others as cited above, that a "fist pump" in the situation Grinn found himself in showed indifference to his job duty or responsibility of "professionalism." We disagree.

¶16 R.B. Stewart admittedly cannot "anticipate every possible type of activity that would violate its policies." As the commission appears to interpret 40 O.S. § 2-406

¶17 Although it is new to § 2-406, the phrase "knew, or should have reasonably known" has an extensive common law and statutory history. Early cases use the standard of when a "person of ordinary sensibilities and prudence" would know or discover a material fact. Ramage Min. Co. v. Thomas, 1935 OK 47044 P.2d 19Kassick v. Spicer, 1971 OK 131490 P.2d 251Blackmer v. Cookson Hills Elec. Co-op, Inc., 2000 OK CIV APP 13518 P.3d 381

¶18 We find no record that Grinn had "actual or constructive knowledge" that the behavior that caused his firing

CONCLUSION

¶19 As a matter of policy, Oklahoma adheres to the employment-at-will rule unless superseded by contract or public policy. The question here, however, has no connection to this doctrine. Nor is it one of whether Grinn was suited by temperament or skill to drive a fuel truck, or whether R.B. Stewart made the right decision for its business by dismissing Grinn. The question here is one of the legislatively created balance between an entitlement to unemployment benefits and the policy that a worker should not receive those benefits if the loss of employment is due to workplace misconduct.

¶20 The commission's briefing in the trial court, however, paid scant attention to R.B. Stewart's burden to show that Grinn knew or reasonably should have known that his actions constituted a material or substantial breach of company rules. The commission appeared to regard Grinn's apparent unsuitability as a fuel truck driver to equate to statutory misconduct as a matter of law.

¶21 In this case, we find no evidence showing that Grinn knew or should have known that his fist pump constituted misconduct as that term is defined by statute. As such, the board of review's decision denying benefits on this basis was in error. The trial court's order is reversed, and the matter is remanded for entry of an order reinstating Grinn's unemployment benefits.

¶22 REVERSED AND REMANDED.

WISEMAN, P.J., and FISCHER, C.J. (sitting by designation), concur.

FOOTNOTES

which result in a material or substantial breach of the employee's job duties or responsibilities." For purposes of this opinion, will assume the tribunal intended to find a material or substantial breach of Grinn's duties or responsibilities rather than simply a "breach of obligations."

 were for misconduct because the employee "breached the duty to be excellent." Eligibility would then be based entirely on a hearing officer's subjective opinion of what the employee should have understood to constitute "excellence" or "professionalism" in any given situation. If the legislature intended § 2-406(B) to clarify what constitutes "misconduct," this interpretation works towards the opposite result and will surely lead to arbitrary and inconsistent decisions.

 the incident in question and implied that it may have relied on these observations as a form of failure-to-progress misconduct. Even presuming that failure-to-progress in training can ever constitute "misconduct" as defined by the statute--a proposition about which we have some doubt (see note 12, below)--we do not find the company's assertions to be material given its admission that, but for the offending fist pump, Grinn would not have been fired.

Further, supervisor Pogue testified any "issues" with Grinn's performance were "addressed through the trainer" and he knew the trainer had tried to give Grinn "an understanding of our steps, our system" but that he could not say that Grinn had been told of "unsatisfactory progress." Trainer Welch did not testify, and there was no testimony that Grinn was actually given any notice that he was breaching a work rule or requirement or not making satisfactory progress. Grinn's denial of receiving any notice of deficient performance or any potential breach of duty prior to the accident was, therefore, uncontradicted.