# Little *v.* Central District and Printing Telegraph Company, Appellant.

213      229
d 30 SC ⁵179

213      229
h 33 SC 190

*Negligence—Telephone companies—Highway—Act of April 29, 1874, sec. 33, P. L. 73.*

The right of a telegraph or telephone company to place its poles on the public highways of the state is statutory, and while the Act of April 29, 1874, sec. 33, P. L. 73, conferring the franchise must not be construed so as to defeat the grant, yet the company must exercise its franchise within the statutory limitations.

The legislature did not intend by the act of April 29, 1874, sec. 33, to deprive the public of the use of the highways for any proper and reasonable means of travel, but intended that the franchise granted the companies by the act should be exercised in subordination to the rights of the public on the roads of the state.

Where a telephone company plants a pole so near to the traveled portions of a highway, that a person seated on the side of a hay wagon with feet extending about a foot from the wagon is injured by contact with the pole, the company will be liable for the injuries sustained.

It is not of itself negligence for a person riding in a wagon on a public highway to permit his feet or arms to extend beyond the side of the vehicle. When one is injured while occupying such position, it is for the jury to determine whether he was, at the time, exercising the care required by the circumstances, unless the danger was so apparent that a reasonably prudent person would not have taken the risk. In that event, the court may hold him negligent as a matter of law.

*Negligence—Driver of private conveyance*

The negligence of a driver of a private conveyance cannot be imputed to a person riding in the vehicle, who was not the employer of the driver.

Argued Oct. 19, 1905.   Appeal, No. 155, Oct. T., 1905, by defendant, from judgment of C. P. Butler Co., Sept. T., 1905, No. 65, on verdict for plaintiff in case of Eleanor C. Little v. The Central District and Printing Telegraph Company. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ.   Affirmed.

Trespass to recover damages for personal injuries. Before GALBREATH, P. J.

The circumstances of the accident are stated in the opinion of the Supreme Court.

At the trial the court, after reading to the jury section 33 of the act of April 29, 1874, charged, inter alia, as follows:

[So, gentlemen, you will see under the law the defendant company had the right to place its poles along or upon the public highway, but in so doing it must not so place them as to incommode the public use of the highway. As you all know the public highways are created in the first instance and principally for the use of the travelers upon them and that public use must not be rendered dangerous or inconvenient by telegraph companies in placing poles upon it. Now, gentlemen, the company had therefore the right to place its poles upon the public highway; it did not have the right and would not have the right to place the poles upon the traveled portion of the road. You understand what is meant by that, the part that customary travel occupies and takes on the public highway. It would not have the right to plant its poles on that portion of the highway and I would say it would not have the right to place its poles in such near proximity to the traveled track of the highway as to render the highway unsafe or inconvenient. In placing its poles so as to not incommode the use of the highway, therefore, we think it should not place its poles in a position to render inconvenient and unsafe public travel along the highway. If in placing them they are located upon the traveled portion of the public highway, the traveled track, that, gentlemen, it would go without saying, would be placing them where they would inconvenience, at least, the travel. If placed in such close proximity to the traveled or beaten track as to make probable or natural that a person driving along in the daytime or nighttime would meet with an accident and receive an injury such placing of it would be a placing so as to incommode the public use of the highway.] [2]

[Now, gentlemen, the company had therefore the right to place its poles upon the public highway, it did not have the right and would not have the right to place the poles upon the traveled portion of the road. You understand what is meant by that, the part that customary travel occupies and takes on the public highway. It would not have the right to plant its poles on that portion of the highway and I would say it would not have the right to place its poles in such near proximity to the traveled track of the highway as to render the highway unsafe and inconvenient. In placing its poles so as to not incommode the use of the highway, therefore, we think

it should not place its poles in a position to render inconvenient and unsafe public travel along the highway. If in placing them they are located upon the traveled portion of the public highway, the traveled track, that, gentlemen, it would go without saying, would be placing them where they would inconvenience, at least, the travel. If placed in such close proximity to the traveled or beaten track so as to make probable or natural that a person driving along in the daytime or nighttime would meet with an accident and receive an injury, such placing of it would be a placing so as to incommode the public use of the highway.] [3]

[The question as to where this pole was placed with reference to the traveled or beaten track of the highway is a matter somewhat in dispute. On part of the plaintiff it is alleged this was placed in 1896 in what was at that time a portion of the traveled track of the highway. You have heard the witnesses who testified to that effect, I believe Mr. Shannon, possibly Mr. Cashdollar and others. They say they have known the road for quite a number of years and at the time when the pole was placed there it was placed on a portion of the public highway then used for the driving of vehicles over it. If that were true that would, we think, be an encroachment on the highway not authorized or intended by the act of assembly, or, if the company placed it in such near proximity to that traveled or beaten track as to naturally and probably lead to results such as complained of in this case, then we think that, gentlemen, would be placing it so as to incommode the public highway and such as not warranted by the act of assembly.] [4]

[You remember also the testimony of the witnesses for the defendant as to where the pole was located with reference to the traveled track as now and formerly was. Some state there is grass growing on the location now. You will take that fact into consideration in connection with the other testimony, and the time that elapsed since the pole was placed there, and from all the testimony you will conclude whether or not that pole was placed upon the traveled track at that time, in which case we think it would be negligence on their part, or if not placed on was in such close proximity as to render probable such an injury as complained of in this case.] [5]

[On the part of the defendant it is argued and contended

here that it was negligent of Miss Little to be riding in the nighttime in the manner in which she was.   Now, gentlemen, we may say to you that public roads are made for all sorts of proper travel upon them and with all kinds of vehicles such as are usually used by persons traveling upon the roads, and we may say to you that all have a right to travel upon the public highways in parties under conditions such as the parties were traveling under in this case, and have a right to travel if they wish to travel upon hay ladders with hay upon them and also in the nighttime.] [6]

[So that in the location of the pole on the highway the defendant may be charged with the knowledge that persons may travel with all manner of vehicles reasonable and proper, and may travel in the nighttime as well as in the daytime, and further charged with the knowledge and fact that the nights sometimes are dark.   All those things enter into the question of the determination of the defendant's negligence, and also into the question of the determination of the plaintiff's contributory negligence.] [7]

[It has been argued and the court has been asked to say that it was negligence on the part of the plaintiff riding on hay ladders with her feet extending out for some little distance over the bow of the wagon.   We feel that we could not say this as a matter of law.   That is a matter of fact to be passed upon by the jury and it is for you to say from your knowledge of affairs and your experience as men in the country and passing over the highways as to whether or not this was a dangerous or negligent position for the plaintiff to assume in riding in that way at that time.] [8]

[And I may say to you just here that under the law as it stands in this State at this time it does not seem that the negligence of the driver of a private conveyance can be attributed to those with him.   It seems to be settled in this State that the others cannot be held for the negligence of the driver.   It was a matter of some controversy for a long time, but now the law seems to be settled in that way.   So that even if the driver in this case was negligent that negligence could not be charged up to the plaintiff in this case as contributory negligence on her part because she would not be held for the negligence of the driver.] [9]

Verdict and judgment for plaintiff for $4,250. Defendant appealed.

*Errors assigned* among others were (2–9) above instructions, quoting them.

*S. F. Bowser,* with him *A. L. Bowser,* for appellant.—The burden of proving negligence is on the party alleging it. The law will not presume it for him. There is always a presumption against it: McCully v. Clarke & Thaw, 40 Pa. 399; P. & R. Railroad Co. v. Hummell, 44 Pa. 375; Whitaker v. Del. and Hudson Canal Co., 87 Pa. 34; Federal St. and Pleasant Valley Ry. Co. v. Gibson, 96 Pa. 83; Baker v. Fehr et al., 97 Pa. 70; Leidy v. Quaker City Cold Storage Co., 180 Pa. 323; Davidson v. Humes, 188 Pa. 335; Philadelphia & Reading R. R. Co. v. Boyer, 97 Pa. 91.

Contributory negligence in any degree on part of the plaintiff will prevent recovery in an action for damages: Monongahela City v. Fischer, 111 Pa. 9; Long v. Milford Twp., 137 Pa. 122; Dougherty v. Philadelphia, 210 Pa. 591; Township of Crescent v. Anderson, 114 Pa. 643; Dean v. Penna. Railroad Co., 129 Pa. 514; O'Toole v. Pittsburg & Lake Erie R. R. Co., 158 Pa. 99.

*Lev. McQuistion,* with him *John H. Wilson,* for appellee.— cited: McCully v. Clark, 40 Pa. 399; Reeves v. R. R. Co., 30 Pa. 454; R. R. Co. v. Zebe, 33 Pa. 318; Carroll v. R. R. Co., 12 W. N. C. 348; R. R. Co. v. Ogier, 35 Pa. 60; Robinson v. R. R. Co., 66 N. Y. 11; Finnegan v. Foster Twp., 163 Pa. 135; Borough of Carlisle v. Brisbane, 113 Pa. 544; Dyer v. Erie Ry. Co., 71 N. Y. 228; Masterson v. N. Y. C. & H. R. R. Co., 84 N. Y. 247.

OPINION BY MR. JUSTICE MESTREZAT, January 2, 1906:

On the evening of July 17, 1903, a party of twenty-seven young ladies and gentlemen drove from Callery to Harmony, a distance of about eight or nine miles, in Butler county, to attend a social function at the latter place. The vehicle was a farmer's ordinary hay wagon, and was drawn by two horses.

The rack or ladders on the wagon were covered with hay and the members of the party were seated at different places on the hay. Frank Kramer drove the team on this occasion. He was a window-glass cutter by trade, but at this time was in the employ of the Ball & Cooper Coal Company, the owner of the horses and wagon which carried the party to Harmony. While he was the driver of the team, the evidence does not show that he was a member of the party, nor does it show all the persons who composed the party. Nor is it disclosed by the evidence whether the owner of the team furnished it gratuitously for the occasion or was compensated for its use, or whether Kramer was paid for his services as driver, or whether they were rendered without compensation.

The party left Harmony about midnight to return home. As the wagon was passing along the public road it came in contact with one of the defendant's telephone poles—"slightly, just enough to allow it to slide past"—and Miss Little, the plaintiff, was struck by the pole, knocked from the wagon and injured. The pole was on the west side of the highway and she was seated on that side of the wagon with her feet extending about a foot out over the bow of the hay rack, which was over the rear wheel. Kramer sat in front and was driving in a slow trot. The road where the accident occurred is a public highway and runs north and south along a hill side which descends from east to west. The width of the traveled part of the road east of the pole, exclusive of the gutter on the east side, is about thirteen or fourteen feet and is practically level, except possibly a slight descent from the west to the east side with a slight rise in the middle. Brush grows on both sides of the road. The telephone line was constructed at this point in 1896.

The plaintiff's statement avers that the road where the accident occurred " is a regularly ordained, laid out, opened, used and traveled public highway," and that the defendant company negligently and unlawfully placed the pole " in and upon the said public road and upon the usual traveled portion of the said road and the said defendant company has negligently, wrongfully and unlawfully maintained the said telegraph or telephone pole in and upon the said public road and the traveled portion thereof for several years last past and yet continues to so maintain the same." It is claimed that the alleged negligent action

of the defendant company in placing its pole on the public highway caused the injury sustained by plaintiff for which this suit was brought.

On the trial of the cause, the court submitted to the jury, with very full instructions, the alleged negligence of the defendant company as well as that of the plaintiff. The result was a verdict for the plaintiff, and the defendant has appealed, claiming that the court erred in the admission of certain testimony, in the charge to the jury, and in the answers to its first, fourth, sixth and eighth points, the last of which requested binding instructions for the defendant company.

We have read very carefully the testimony and cannot see how the case could have been withdrawn from the jury. The credibility of the witnesses was for the jury and there was sufficient testimony, if believed, to warrant the finding that the telephone company had placed its telephone pole on the traveled portion of the highway, or in such close proximity to it as to endanger the safety of persons using the road, or, in the language of the act of 1874, "as to incommode the public use of said road." Without quoting the testimony it is sufficient to say that several of the witnesses testified to this fact. While these witnesses vary in their estimates of the distance from the west side at which the pole stands within the traveled part of the road, they all say it is on the traveled part of the highway and that it is an obstruction to the use of the road by the public. The question was therefore for the jury.

The right of the defendant company to place its poles on the public highways of the state is statutory, and while the act conferring the franchise must not be construed so as to defeat the grant, yet the company must exercise its franchise within the statutory limitations. The authority by which a telegraph or telephone company is empowered to construct its lines on the public highways of this state is conferred by the Act of April 29, 1874, P. L. 92, 2 Purd. Dig. 2001, the thirty-third section of which provides that "such corporation shall be authorized. . . . to construct lines of telegraph along and upon any of the public roads, streets, lands or highways . . . . within the limits of this state, by the erection of the necessary fixtures, including posts . . . . for sustaining the cords or wires of such lines, but the same shall not be so constructed as

to incommode the public use of said roads, streets or high-
ways . . . . " There can be no doubt as to the proper inter-
pretation and the meaning of this legislation. The language
is explicit and the purpose of the statute is manifest. The
power to construct its lines "along and upon" a public high-
way is granted to the corporation in plain terms. Such was
the evident purpose of the act. But equally clear and ex-
plicit is the language employed by the legislature in the enact-
ment in prescribing a limitation upon the power of such corpo-
ration to enter and construct its lines upon the highways of
the state. Its right to use the public highways in the construc-
tion and maintenance of its lines was qualified and prohibited
to the extent that the public should not be inconvenienced in the
proper use of the highways. Its line, says the act, "shall not
be so constructed as to incommode the public use of said roads,
streets or highways." This limitation made the use of high-
ways by a telegraph company secondary and subordinate to
that of the public for which the roads of the state were pri-
marily intended. The legislature did not intend, by this legis-
lation, to deprive the public of the use of the highways for any
proper and reasonable means of travel, but intended that the
franchise granted telegraph companies by the act should be ex-
ercised in subordination to the rights of the public on the roads
of the state. Such, we think, was the manifest purpose of the
act of 1874. A like interpretation was put upon a similar stat-
ute of Ohio by the supreme court of that state in Cincinnati
Inclined Plane Railway Company v. Telegraph Association, 29
Am. St. Rep. 559. In that case Mr. Justice DICKMAN, deliv-
ering the opinion of the court, says (p. 567): "The authority
given by statute to a telephone company to construct its lines
from point to point, along and upon any public road, under the
continuing prohibition that 'the same shall not incommode the
public in the use of such road,' would plainly indicate an in-
tention on the part of the legislature that the company shall
exercise such franchise with reference to the comfort and con-
venience of the traveling public, and shall not, in any manner,
abridge or impair the use, by the public, of the most approved
methods of travel and transportation. And a reasonable inter-
pretation of the statute would lead to the conclusion, that to
impair the public enjoyment of an approved method of con-

veyance on the streets would be in derogation of the statutory prohibition that the public shall not be incommoded in the use of the roads or highways."

The errors assigned to the charge raise the question of the proper interpretation of the act of 1874, but we think the learned judge construed the act substantially in conformity with what is said above.

In the case at bar it conclusively appeared from the evidence that there was ample space along the highway for placing the pole in question without planting it in the traveled part of the road, or so near to it that it would inconvenience or interfere with those who might use the highway. The legal width of the road is thirty-three feet, and but seventeen feet were used for the roadway and for the gutter on the east side. The evidence did not disclose on which side of the traveled part was the unused portion of the thirty-three feet. It is apparent, however, that there was no necessity for placing the pole in a position that would obstruct the use of the road.

The plaintiff's negligence was a question for the jury. It is not of itself negligence for a person riding in a wagon on a public highway to permit his feet or arms to extend beyond the side of the vehicle. When one is injured while occupying such position it is for the jury to determine whether he was, at the time, exercising the care required by the circumstances, unless the danger was so apparent that a reasonably prudent person would not have taken the risk. In that event, the court may hold him negligent as a matter of law. Here the testimony clearly sent the question to the jury. Nor can the driver's negligence be imputed to the plaintiff under the facts disclosed by the testimony in the case. The evidence shows simply that at the time plaintiff was injured she was being carried in a private conveyance owned by the coal company, which was driven by a person engaged in the company's service. Under such circumstances it is settled by recent decisions of this court that the negligence of the driver is not imputable to one who is injured while being carried in the conveyance : Carlisle Borough v. Brisbane, 113 Pa. 544 ; Dean v. Pennsylvania Railroad Co., 129 Pa. 514 ; Jones v. Lehigh & New England Railroad Co., 202 Pa. 81.

We see no error in the court's answers to the defendant's

first, fourth and sixth points.    If there was error in admitting the testimony of John Ficht, a witness for the plaintiff, which is the subject of the first assignment, it was cured by the immediate order of the court striking out the testimony.

The assignments of error are overruled and the judgment is affirmed.