Scheel *v.* Tremblay, Appellant.

Argued September 17, 1973.   Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, CERCONE, and SPAETH, JJ. (SPAULDING, J., absent).

*Joseph G. Manta,* with him *James M. Marsh,* and *LaBrum and Doak,* for appellant.

*Charles H. Hinkson,* with him *Hinkson & Brennan,* for appellee.

OPINION BY HOFFMAN, J., November 16, 1973:

This is an appeal from an order granting appellee's motion for a summary judgment. Appellants contend that the court below erred in granting the motion because the issues of appellee's negligence and the proximate cause of plaintiff's injuries were jury questions.

On July 19, 1972, at 9:40 p.m., defendant-appellant (hereinafter Tremblay) was driving his automobile in an easterly direction on Scottsdale Road in Lansdowne, Pa. at a speed not in excess of the posted limit. Plaintiff-appellant (hereinafter Scheel) and her husband were passengers in the Tremblay vehicle. Tremblay testified that a car travelling in a westerly direction around a curve in the road veered toward the middle of the road. To allow the approaching vehicle to pass, Tremblay steered slightly to the right and his right front fender struck a utility pole placed and maintained by the appellee, Philadelphia Electric Co. The pole was located ten inches from the paved portion of the road, was unlit, and apparently unmarked by reflectors.

Scottsdale Road is a narrow two lane highway with a series of sharp "corkscrew" curves. Investigating police officer stated that it is a particularly dangerous road on which there have been a large number of accidents. Approximately fifty to seventy-five feet west of the utility pole at a curve in the highway, a rock protrudes from the contours of the adjacent land and overhangs the road. Although the rock does not protrude onto the road itself, drivers of cars travelling west have a natural tendency to veer out of the westbound lane of traffic and slightly into the middle and eastbound lane of the road to avoid it. When confronted with this, drivers in the eastbound lane tend to steer to the shoulder of the road to allow westbound traffic to pass. The question presented is whether, considering the evidence in the light most favorable to the appellants, there exists any genuine issue as to a material fact and, if not, whether the appellee was entitled to judgment as a matter of law.

"Summary judgment is to be rendered only if 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Kent v. Miller,* 222 Pa. Superior Ct. 390, 392, 294 A. 2d 821 (1972); *Moore v. Zimmerman,* 221 Pa. Superior Ct. 359, 292 A. 2d 458 (1972).

While no genuine issue as to a material fact exists, we believe the trial court erred in ruling as a matter of law that the appellee was not liable for the injuries sustained by Tremblay's passengers. It has long been the law in this and other jurisdictions that utility companies are liable for harm caused by the negligent placement and maintenance of utility poles. *Nelson v. Duquesne Light Co.,* 338 Pa. 37, 12 A. 2d 299 (1940); *Scalet v. Bell Telephone Co.,* 291 Pa. 451, 140 A. 141

(1928) ; *Little v. Central District & Printing Co.,* 213 Pa. 229, 62 A. 848 (1906) ; see Annot., 3 A.L.R. 2d 6. In *Nelson v. Duquesne Light Co.,* supra, the Supreme Court adopted the test announced by then Judge CARDOZO in *Stern v. International Ry. Co.,* 220 N.Y. 284, 291, 115 N.E. 759 (1917) : "The poles, if placed and maintained with due regard for the public safety, are not unlawful obstructions . . . *they must be so located as to avoid any unreasonable danger to travelers on the highway . . . The question is whether the place chosen is so dangerous and the danger so needless that the choice becomes unreasonable.* If danger in that degree is present [the company is] charged with liability." Liability is not, as the trial court held, limited to those situations in which the pole is located in the roadway itself,[1] but may be imposed where the placement of a pole close to the edge of a highway constitutes a fore- seeable and unreasonable risk of harm to users of the highway. In such cases, the conditions of the highway are critical in determining whether the location of a utility pole adjacent thereto constitutes an unreason- able risk of harm to users of the road. *Nelson v. Du- quesne Light Co.,* supra; *Martin v. Southern Bell Tele- phone Co.,* 126 Ga. App. 809, 192 S.E. 2d 176 (1972) ; *Bourget v. Public Service Co.,* 98 N.H. 237, 97 A. 2d 383 (1953) ; *Peninsular Telephone Co. v. Marks,* 144 Fla. 652, 198 So. 330 (1940) ; *Norton v. Pomona,* 5 Cal. 2d 54, 53 P. 2d 952 (1935) ; see 3 A.L.R. 2d 6, at pp. 51- 57. The narrowness and general contours of Scottsdale

---

[1] The court distinguished *Nelson v. Duquesne Light Co.,* supra, on the basis that the pole in that case was in the roadway itself. Although the court characterized the pole as in the road, a careful reading of the facts indicates that the pole was located in an un- bounded triangular island separating two highways. The operator of the vehicle which struck the pole was not within the confines of either highway when the collision occurred, but in the paved and unmarked triangular separation.

Road, the lack of illumination of the pole, the presence or absence of reflective markers, the proximity of the pole to the highway, the availability of less dangerous locations, and the natural tendency of westbound traffic to veer toward the middle of the road near this pole are circumstances in light of which a jury could find that the appellee's placement and maintenance of the pole constituted an unreasonable danger to users of the highway.

The trial court also held that the exclusive cause of the accident was the action of one or both of the drivers involved. Apparently the court held that even if the appellee's placement of the pole was negligent, it was a passive condition upon which the negligence of the drivers acted as an intervening and superseding cause relieving the appellee of any liability for plaintiff's injuries.

In *Flickinger v. Ritsky,* 452 Pa. 69, 75-76, 305 A. 2d 40 (1973), the Supreme Court rejected the distinction between passive conditions of negligence and intervening acts of negligence as a basis for determining causation. In reaffirming the rule of §447 of the Restatement (Second) of Torts[2] as the law of causation in Pennsylvania, the court stated: "[T]his statement of law [447] ... presents fact questions of its own force. An inter-

---

[2] "§447. Negligence of Intervening Acts.

"The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if

"(a) the actor at the time of negligent conduct should have realized that a third person might so act, or

"(b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or

"(c) the intervening act is a normal consequence of a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent."

vening negligent act will not be a superseding cause relieving the original negligent actor from liability if that actor at the time of his negligent act should have realized that another person's negligence might cause harm; or, if a reasonable man would not regard the occurrence of the intervening negligence as highly extraordinary; or, if the intervening act is not extraordinarily negligent. *What the original actor should have realized and what a reasonable man would say was highly extraordinary are, of course, fact questions which must in the majority of cases be left to the jury. . . . At the same time it is necessary to recognize that normally such situations present essentially factual questions, and that where reasonable minds could differ, resolution of such questions is properly left to the jury.*" The realities of automobile travel, considered in light of the conditions of this particular highway and the location of the pole, are not such that a slight deviation from the paved portion of a road should be deemed such an extraordinary event as to bring this case within the narrow class of cases which should be taken from a jury. See *Nelson v. Duquesne Light Co.,* supra; *Martin v. Southern Bell Telephone Co.,* supra; *Bourget v. Public Service Co.,* supra.

The order of the court below is reversed, the judgment vacated, and the case remanded for further proceedings.