647 A.2d 687

**Brian NOVAK, Appellant,**

**v.**

**Shirley I. KILBY, the Pennsylvania Department of Transportation, Commonwealth of Pennsylvania and United Telephone Company of Pennsylvania.**

Commonwealth Court of Pennsylvania.

Argued June 10, 1994.

Decided Aug. 30, 1994.

Joseph J. Nypaver, for appellant.

Stephen L. Dugas, for appellee Shirley I. Kilby.

Louis C. Long, for appellee United Telephone Co. of PA.

Before McGINLEY and FRIEDMAN, JJ., and NARICK, Senior Judge.

FRIEDMAN, Judge.

Brian Novak appeals from an order of the Court of Common Pleas of Bedford County granting summary judgment to Shirley I. Kilby and to the United Telephone Company of Pennsylvania (telephone company).[1] We affirm.

On September 2, 1989, Novak, a 16 year old minor, went to a Labor Day party which he had heard about from friends. The party was given by Kilby at her farm in Bedford County. At the party, Novak consumed approximately 12 ounces of beer available from a tapped keg. While driving a friend home from the party, Novak lost control of his car at a curve on southbound State Route 1001. His car crossed the two-lane road and crashed into a wooden post and cable guardrail and a telephone pole directly behind the guardrail on the opposite side of the road from the direction he was travelling. Novak suffered severe injuries.

Novak sued Kilby, the Pennsylvania Department of Transportation (DOT) and the telephone company whose pole he hit and severed. Kilby and the telephone company brought motions for summary judgment[2] which the trial court granted.

■ The trial court granted summary judgment to Kilby on the grounds that Kilby did not knowingly and intentionally serve alcohol to minors. Relying on *Alumni Association v. Sullivan*, 524 Pa. 356, 572 A.2d 1209 (1990), which held that, for liability to attach, a social host must *knowingly* furnish alcohol to a minor,[3] the trial court reasoned that the record

1. In its order, the trial court also granted Novak's motion for compliance seeking to have defendant, Pennsylvania Department of Transportation (DOT) answer interrogatories more fully and completely. This last portion of the order is not at issue here.

2. Summary Judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, Pa.R.C.P. No. 1035, and should be granted only where the right is clear and free from doubt. *Mullen v. Borough of Parkesburg*, 132 Pa.Commonwealth Ct. 321, 572 A.2d 859 (1990). In making this determination, the trial court must examine the record in the light most favorable to the non-moving party. *Id.*

3. In *Alumni Association*, our Supreme Court refused to find Bucknell University or a national fraternity liable for property damages allegedly

contained no evidence "that defendant Kilby planned and organized this party intending to serve alcohol to minors." (Trial ct. op. at 5.) On appeal,[4] Novak argues that the trial court erred in granting summary judgment to Kilby because genuine issues of fact exist as to whether Kilby knowingly and intentionally furnished alcoholic beverages to Novak.[5] We disagree.

Here, Novak himself claims that he learned of Kilby's party by word-of-mouth and that he consumed beer which was accessible to all persons present at the party. We have reviewed the record, particularly the statements of Novak and his witnesses, and agree with the trial court that there is no evidence that Kilby had actual knowledge that minors were drinking beer.[6] Thus, no genuine issues of material fact

caused by a minor student who had been served alcohol at a party held in his freshman dormitory and at one hosted by the fraternity's local chapter. The Court determined that neither the University nor the national fraternity had *actual knowledge* of the student's alcohol consumption and refused to extend social host liability to include an "or should have known" standard. Relying on *Alumni Association*, our court has stated that "the pivotal inquiry is not whether a social host 'intentionally and substantially aided and encouraged the consumption of alcohol by a minor guest', but only whether a party had actual knowledge rather than imputed knowledge based on the party's relationship to the minor." *Muntz v. Commonwealth of Pennsylvania*, 157 Pa.Commonwealth Ct. 514, 516, 630 A.2d 524, 525 (1993).

4. Our scope of review on appeal from a grant of summary judgment is limited to determining whether the trial court committed an error of law or a manifest abuse of discretion. *Mullen v. Borough of Parkesburg*, 132 Pa.Commonwealth Ct. 321, 572 A.2d 859 (1990).

5. Novak asserts that the trial court misinterpreted the law by relying in part on a 1988 Superior Court case, *Jefferis v. Commonwealth*, 371 Pa.Superior Ct. 12, 537 A.2d 355 (1988), where intent to serve alcohol to minors was an element of liability, rather than upon more recent cases of the Pennsylvania Supreme Court and of our court in this developing area of the law. We believe that the trial court accurately interpreted recent developments in this area of the law.

6. Novak contends that the trial court improperly relied on Kilby's testimony and ignored statements of Novak's witnesses. The trial court did make findings which could be construed this way. For instance the trial court found that as soon as "Kilby became aware of the presence of a considerable amount of uninvited people, largely minors, she immediately took steps to have them leave, by directly approaching the people and by using the public address system...." (Trial ct. op. at 3.) On a motion for summary judgment, the trial court may not read the

remain for resolution at trial and Kilby is entitled to judgment as a matter of law.

With regard to the telephone company, Novak argues that the trial court erred in granting summary judgment because genuine issues of material fact exist as to the reasonableness of telephone company's location of its telephone pole which, Novak maintains, evidences an absence of due care which proximately caused his injuries. In support of his argument, Novak contends that the telephone company had a duty to move the pole because the pole, located on a curve of the state highway, 5½ feet from the edge of the pavement and across the road from the lane in which Novak was travelling, constituted a foreseeable and unreasonable risk of harm to users of the highway. Moreover, Novak asserts that the pole did not comply with DOT regulations which *recommended* that poles located within the highway right-of-way be a minimum of thirty feet from the edge of the pavement.[7]

record in the light most favorable to the moving party, in this case, Kilby. However, because these facts are not material here, Novak was not prejudiced by the trial court's error and, examining the record in the light most favorable to Novak, Kilby is still entitled to judgment as a matter of law.

7. Novak refers to recommendations contained in a DOT design manual which were discussed by his expert in an accident reconstruction report. According to the expert, as revised in 1976 the DOT manual provided that: "Utilities are expected to design proposed major reconstruction of existing pole lines to conform to the provisions of [the policy to prohibit installation of above-ground facilities at locations which DOT design and safety engineers determine to have high accident potential]." However, the expert notes that the above provision was eliminated in DOT's 1977 revisions and that:

In 1977, only # 3 of the numbered paragraphs for EXISTING HIGHWAYS has to do with existing poles. Paragraph # 3 says that existing poles may be maintained in their existing locations:
   —if there is no record of the pole having been involved in a vehicle accident.
   —if PaDOT has determined that relocation to another protected location is not feasible from an economical or engineering standpoint.
   —if the pole requires replacement due to vehicle damage, and there is no record of previous accident involvement, the pole may remain in the same location subject to "... field view[ing] by [DOT's] District office personnel to determine whether the facility should be relocated

In response, the telephone company contends that the undisputed facts show that DOT regulations do not call for relocation of the pole because the telephone company had placed the pole at that location in 1941 and it had remained there without incident for 47 years. Thus, argues the telephone company, its placement of the pole did not breach any duty to Novak, and the placement of the pole was not the proximate cause of the accident which led to Novak's injuries. The trial court agreed, noting that the regulations referred to are advisory in nature and have no regulatory effect. In addition, the trial court noted that, unlike the situation here, cases imposing liability on a utility have involved situations where the poles were placed so close to the pavement as to be dangerous to drivers still on the road. The trial court concluded that the telephone company had no duty to move the pole and that the causal connection between the location of the telephone pole and the accident in which Novak was injured was too remote to impose liability on the telephone company. We agree.

■ To state a cause of action in negligence, a plaintiff must show that: (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) the breach was the proximate or legal cause of the plaintiff's accident; and (4) the breach resulted in injury to the plaintiff. *Department of Public Welfare v. Hickey*, 136 Pa.Commonwealth Ct. 223, 582 A.2d 734 (1990). If the plaintiff fails to establish one of the essential elements of actionable negligence, the defendant has valid grounds for summary judgment.

■ A duty may be created by a statute, violation of which constitutes a breach of a duty. *Id.* Here, there is no breach of a statutory duty and, as the trial court points out, because of the lack of previous accidents, DOT does not require the

or other provisions made in the interest of safety and the feasibility of such relocation."

PaDOT's policy towards existing pole lines, in effect since 1976 and 1977, is to accept poles where they are unless the poles are twice broken by auto accidents. Only then, and then only by implication, is relocation, or other safety treatment, mandatory.

(R.R. at 187a.)

telephone company to move the pole. (Trial ct. op. at 8.) (Referring to Novak's affidavit in opposition to the telephone company's motion for summary judgment, Accident Reconstruction Report of Lance Robson, p. 10.)

Even without violation of a statute or regulation, however, the telephone company may be held liable for Novak's injuries if the telephone pole was negligently placed so as to breach a duty to the travelling public. *Nelson v. Duquesne Light Company,* 338 Pa. 37, 12 A.2d 299 (1940). In *Nelson,* Duquesne Light Company erected a pole in a paved area so close to the roadway that vehicles had to veer to the right to avoid it. The light on the pole did not reflect at or near the base of the pole and several other accidents had occurred there. In *Nelson,* the Pennsylvania Supreme Court, borrowing from Justice Cardozo's opinion in *Stern v. International Ry. Co.,* 220 N.Y. 284, 115 N.E. 759 (1917), stated the following test for determining whether a utility company is liable for negligent placement of a utility pole:

> "The poles, if placed and maintained with due regard for the public safety, are not unlawful obstructions.... *[T]hey must be so located as to avoid unreasonable danger to travelers upon the highway.... The question is whether the place chosen is so dangerous and the danger so needless that the choice becomes unreasonable.* If danger in that degree is present ... [the utility] is liable.... The question, therefore, is whether there is any evidence that ... when the accident occurred, the location of these poles was dangerous, and that the danger was unreasonable."

*Nelson,* 338 Pa. at 45–46, 12 A.2d at 303–04, quoting from *Stern* (emphasis supplied in *Nelson* ).

In *Scheel v. Tremblay,* 226 Pa.Superior Ct. 45, 312 A.2d 45 (1973), the Pennsylvania Superior Court, following the test enunciated in *Nelson,* found that a pole which was 10 inches from the edge of the unlit roadway and which had no reflectors to warn motorists of its presence, presented an unreasonable and unnecessary danger to drivers because a jutting rock overhanging the two-lane curving road caused cars to veer toward the middle of the road and then steer back toward the

shoulder; thus, cars tended to stray toward the pole, the placement of the telephone pole presented an unreasonable danger to travelers on the road, and the accident was foreseeable.[8]

Our court reached a different result in *Caldwell v. Commonwealth*, 120 Pa.Commonwealth Ct. 358, 548 A.2d 1284 (1988), a case comparable to this one both procedurally and factually. In *Caldwell*, the vehicle in which the plaintiff was riding strayed from the paved portion of a two-lane highway, "entered an earthen drainage ditch which ran parallel to the highway after steering to the right to avoid a deer; struck and jumped a drainage culvert; crossed a driveway" and then sideswiped a telephone pole. *Id.* at 360, 548 A.2d at 1285. There, the trial court granted summary judgment to a telephone company on the grounds that the injuries suffered were not reasonably foreseeable and that the placement of the telephone pole was not the proximate cause of the plaintiff's injuries. We affirmed the trial court's grant of summary judgment, explaining:

> Although questions of negligence and causation are generally for the jury, the questions of the sufficiency of the evidence prior to presenting an issue to the jury is clearly within the trial judge's discretion. Where insufficient evidence exists to justify an inference of negligence and causation, the trial court may properly grant judgment in favor of the party against whom liability is sought.

*Id.* at 362, 548 A.2d at 1286.

■ We believe that the essential lessons of *Nelson, Scheel,*

---

**8.** In another case, where an out of control car flipped end over end before hitting a utility pole located in a grass and dirt median strip about 10 inches from the roadway, the Superior Court affirmed the trial court's denial of a motion to remove a judgment of compulsory nonsuit because the record contained no *facts* which would enable a jury to find *factual* causation. *Frangis v. Duquesne Light Company*, 232 Pa.Superior Ct. 420, 335 A.2d 796 (1975). *Frangis* is less pertinent to our analysis than the cases discussed in the body of this opinion because it differs most significantly in legal analysis and procedural posture from the case presently before us.

*Caldwell,*[9] and to some extent *Frangis v. Duquesne Light Company,* 232 Pa.Superior Ct. 420, 335 A.2d 796 (1975), are applicable here: (1) the utility has a duty to avoid placing its poles in such a location as to cause an unreasonable and unnecessary risk to travelers on the roadway; and (2) for liability to attach, a reasonably close causal connection must exist between the breach of that duty and the resulting injury.

■ Here, Novak had already lost control of his car, crossed the opposing lane of traffic and left the paved roadway before striking the cable guardrail and the pole located behind it. Nothing in the record indicates that Novak needed to swerve to avoid the pole or that the natural layout of the road funnelled cars toward the pole. Where, as here, the pole has existed without incident for nearly 50 years and the pole's location did not contribute to Novak's losing control of the car and leaving the roadway, it cannot be said that the placement of the pole breached the telephone company's duty to Novak as a traveler on the road. Furthermore, we believe that the causal connection between the location of the pole and Novak's injuries is too remote for liability to attach and that the telephone company's actions cannot, therefore, be considered the proximate cause[10] of Novak's injuries. Thus, we agree with the trial court that the telephone company is entitled to summary judgment.

Accordingly, we affirm the grant of summary judgment to Kilby and the grant of summary judgment to the telephone company.

## ORDER

AND NOW, this 30th day of August, 1994, the order of the Court of Common Pleas of Bedford County, dated August 24, 1993, is affirmed.

9. We note that only *Scheel* and *Caldwell* involved, as this case does, appeal from the grant of a summary judgment motion. *Nelson* and *Frangis* were before the appellate courts in different procedural postures.

10. Proximate cause is a concept applied by the courts "to limit liability where the causal chain resulting in a plaintiff's injuries is too remote." *Caldwell,* 120 Pa.Commonwealth Ct. at 362, 548 A.2d at 1286.