650 A.2d 1192

**Sandra TALARICO and Paul Talarico, her husband, Appellants**

**v.**

**John R. BONHAM, Individually and t/a John R. Bonham Contracting Company, Gerald R. Bunting and Betty Bunting, his wife, Gerald Bunting, Jr., Pennsylvania Power and Light Company, and Commonwealth of Pennsylvania/Department of Transportation.**

Commonwealth Court of Pennsylvania.

Argued Dec. 16, 1993.

Decided Nov. 22, 1994.

468

Nicholas S. Mattise, for appellants.

William M. Blaum, for appellee Pennsylvania Power and Light Co.

Before COLINS, and FRIEDMAN, JJ., and DELLA PORTA, Senior Judge.

DELLA PORTA, Senior Judge.

Sandra Talarico and Paul Talarico appeal from an order of the Court of Common Pleas of Wayne County denying their motion to remove a nonsuit granted in favor of the Pennsylvania Power and Light Company (PP & L). The issue raised on appeal is whether the trial court erred in concluding that the Talaricos failed to present sufficient evidence to establish the necessary elements for a cause of action against PP & L.

On May 1, 1982, at approximately 9:30 p.m., Sandra Talarico was driving her 1964 Buick in a westerly direction along Legislative Route No. 63034 in Cherry Ridge Township, Wayne County, when her car veered to the left, crossed the eastbound lane and struck an electric pole, resulting in injuries to her and her husband Paul Talarico, the passenger in the car. The paved portion of Legislative Route No. 63034 was twenty feet wide and there was fifteen feet unpaved right-of-way on each side. The pole which the car struck had been newly installed by PP & L in December 1981 and was located in the right-of-way, eight feet from the edge of the paved eastbound lane.

On April 4, 1984, the Talaricos commenced an action against PP & L, the Department of Transportation (DOT), the Buntings who owned the land abutting Legislative Route 63034 near the accident site, and John R. Bonham, the Buntings' contractor, who several months before the accident cleared trees, bushes and shrubs from the Buntings' property and covered the area with top soil. The Talaricos alleged, *inter alia*, that their injuries were caused by PP & L's negligence in placing the pole in a dangerously close proximity to the roadway, in failing to conform to DOT safety regulations and guidelines and in failing to warn the close proximity of the pole to the roadway. PP & L later joined Sandra Talarico as an additional defendant, alleging that Paul Talarico's injury was caused solely by her negligent operation of the vehicle.

At the close of the Talaricos' case during a jury trial which commenced in May 1985, the trial court granted a compulsory nonsuit in favor of all defendants and against the Talaricos.

On June 4, 1985, the Talaricos filed a motion for removal of the nonsuit granted in favor of PP & L and DOT. In an order dated April 7, 1993, the trial court refused to remove the nonsuit granted in favor of PP & L. The Talaricos' appeal to this Court followed.[1]

The standard for reviewing a decision to grant a compulsory nonsuit is well established. A nonsuit may not be granted unless, viewing all the evidence and all reasonable inferences arising from it in the light most favorable to the plaintiff, the jury could not reasonably conclude that the elements of the cause of action have been established. *Orner v. Mallick,* 432 Pa.Superior Ct. 580, 639 A.2d 491 (1994). Further, a compulsory nonsuit is valid only in a clear case where the facts and circumstances lead to only one conclusion—the absence of liability. *Harvilla v. Delcamp,* 521 Pa. 21, 555 A.2d 763 (1989).

In order to establish a cause of action for negligence, a plaintiff must prove the following elements: (1) a defendant's duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages. *Morena v. South Hills Health System,* 501 Pa. 634, 462 A.2d 680 (1983); *Pittsburgh National Bank v. Perr,* 431 Pa.Superior Ct. 580, 637 A.2d 334 (1994). The trial court concluded that PP & L did not breach its duty when it placed the pole in the middle of the right-of-way and that the location of the pole was not the proximate cause of the Talaricos' injuries.

It has long been the law of this Commonwealth that utility companies are liable for harm caused by the negligent placement and maintenance of utility poles. *See Nelson v. Duquesne Light Co.,* 338 Pa. 37, 12 A.2d 299 (1940); *Scalet v. Bell Telephone Co.,* 291 Pa. 451, 140 A. 141 (1928); *Little v. Central District & Printing Telegraph Co. of PA,* 213 Pa. 229, 62 A. 848 (1906). In *Nelson,* the Pennsylvania Supreme Court

1. In a subsequent order, the trial court also denied the motion to remove the nonsuit granted in favor of DOT. However, that order is not subject to our review in this appeal.

adopted the following test for determining whether a utility company is liable for negligent placement of a utility pole:

The poles, if placed and maintained with due regard for the public safety, are not unlawful obstructions. They are obstructions incidental to the exercise of a statutory right. The statute has not said, however, where the poles shall be located. *The implied condition is therefore attached that they must be so located as to avoid unreasonable and unnecessary danger to travelers upon the highway.* ... *The question is whether the place chosen is so dangerous and the danger so needless that the choice becomes unreasonable.* ... The question, therefore, is whether there is any evidence that ... when the accident occurred, the location of these poles was dangerous, and that the danger was unreasonable.... We think the jury had the right to find that ... the center poles have become a menace to travelers.... [T]he very location of the poles gives room for conflicting inferences. Plainly, there was at least some risk of accident; plainly, the risk was needless, whatever its degree; plainly, therefore, the inference of fault may be drawn unless the risk was so remote or trifling that reasonable men in the exercise of reasonable care would not have striven to avoid it.

*Id.* 338 Pa. at 45–46, 12 A.2d at 303–4 (quoting *Stern v. International Ry. Co.*, 220 N.Y. 284, 115 N.E. 759 (1917)) (emphasis added in *Nelson* ). Thus, the question of whether a pole is so closely placed to the road as to cause a danger to the travelling public is generally a question of a fact to be determined by the jury after considering a variety of circumstances, including the narrowness and general contours of the road, the presence or absence of reflective mark, the proximity of the pole to the road, the availability of less dangerous locations. *Nelson; Scheel v. Tremblay*, 226 Pa.Superior Ct. 45, 312 A.2d 45 (1973).

■ At the trial, Sandra Talarico testified that just before the accident, when she applied the brake going down a small knoll at approximately thirty miles an hour, her car slid to the left, crossed the eastbound lane and went into the unpaved portion of the right-of-way; she attempted to steer the wheel

back to the right, but was not able to do so due to the accumulated dirt on the right-of-way; and she travelled approximately twenty feet before hitting the pole after she felt her car sliding. The Buntings testified that before PP & L installed the pole in question, they told PP & L employees that many cars had previously gone off the road in the area; and an alternative location of the new poles suggested by them was rejected by PP & L for the reason of additional expenses involved.

The Talaricos also presented the testimony of John N. Finn, a former district construction engineer for DOT. He testified that the terrain features of the area did not justify the placement of the pole in the middle of the clear roadside area; the location of the pole posed a hazard to the travelling public; and less dangerous alternative locations of the poles were available, including placing the poles on the other side of the road where other existing poles, trees, a gully and an embankment were located. He further stated that from a highway engineering safety standpoint, the pole was not placed as close to the right-of-way line as practicable as required by DOT regulations and guidelines.

The DOT regulation provides at 64 Pa.Code § 459.9(b)(1)(i) as follows:

New poles and other aboveground facilities shall be installed outside the highway clear zone and near the right-of-way line as practicable, under the permit and applicable provisions of Design Manual, Parts 2 and 5.

Paragraph 34 of the Highway Occupancy Permit provides in pertinent part:

[U]tility poles, guys and other ground mounted utility appurtenances shall be placed at least thirty (30) feet from the edge of the travelled roadway and not less than twenty (20) feet from the outside edge of the ramp shoulder. When sufficient right-of-way is not available the above ground structures shall not be installed unless adjacent natural obstructions of highway appurtenances are already located

in a manner so as not to create an additional hazard to traffic.

Further, Section 908.B(2)(A) of the Design Manual provides:

When considering the proposed installation of an entirely new facility in the right of way where none previously existed, the Department must endeavor to maintain the existing clear roadside area of a highway right of way free of any fixed objects; this precludes a placement of any new above-ground facility within the existing clear roadside area or right of way thirty feet (30') from edge of pavement, which ever is less.

In the matter *sub judice*, when the evidence is viewed in the light most favorable to the Talaricos, there was sufficient evidence to establish that PP & L breached its duty owed to the public. From the evidence of PP & L's prior knowledge of numerous instances of the cars going off the road in the area, the contours of the road, other available alternative locations of the pole, and DOT safety regulations and guidelines, the jury could have reasonably concluded that PP & L breached its duty to avoid unreasonable and unnecessary danger to the travelling public when it placed the pole in the middle of the right-of-way. The fact that PP & L obtained the permit from DOT to install the new poles does not relieve PP & L from liability. "[N]o permit can authorize the construction and maintenance in the highway of a structure dangerous to ordinary travel." *Nelson*, 338 Pa. at 56, 12 A.2d at 308.

As to the causal connection between the location of the pole and the Talaricos' injuries, the trial court concluded that the injuries were proximately caused by Sandra Talarico's unsafe operation of the vehicle, not by the proximity of the pole to the roadway. The actor's negligent conduct is a proximate cause of harm to others if the conduct is a substantial factor in bringing about the harm. *Taylor v. Jackson*, 164 Pa.Commonwealth Ct. 482, 643 A.2d 771 (1994). In determining whether a negligent conduct was a substantial factor for causing an injury, the following considerations in themselves or in combination with one another are important: (1) the

number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it; (2) whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm, or has created a situation harmless unless acted upon by other forces for which the actor is not responsible; and (3) lapses of time. *Vattimo v. Lower Bucks Hospital, Inc.*, 502 Pa. 241, 465 A.2d 1231 (1983); Restatement (Second) of Torts § 433 (1965). The determination of whether the defendant's conduct was a substantial cause of the plaintiff's injury should not be taken from the jury if the jury may reasonably differ as to that determination. *Ford v. Jeffries*, 474 Pa. 588, 379 A.2d 111 (1977).

In the matter *sub judice*, since there is room for a reasonable difference of opinion as to whether PP & L created or increased the risk of the Talaricos' injuries by placing the pole in the middle of the right-of-way, the trial court erred in concluding as a matter of law that the proximity of the pole was not a proximate cause for the Talaricos' injuries. It cannot be held as a matter of law that PP & L should not have realized that a motorist might crash into the pole placed eight feet from the paved portion of roadway, or that losing control of the car was so extraordinary that PP & L could not have foreseen it.

As the Supreme Court stated, because motorists may meet dangerous situations which are reasonably likely to arise, "it cannot be held as a matter of law that a driver of an automobile should be held *solely responsible* from the accident if he crashes into a pole." *Nelson*, 338 Pa. at 56, 12 A.2d at 308 (emphasis in original). Further, if PP & L's negligent conduct had created or increased the risk that the injuries would occur and was a substantial factor in causing the injuries, it is immaterial to PP & L's liability that the injuries were brought about in a manner which no one in its position could possibly have been expected to foresee or anticipate. *Ford;* Restatement (Second) of Torts § 435(1) (1965).

In granting a nonsuit in this matter, the trial court relied upon *Caldwell v. Commonwealth*, 120 Pa.Commonwealth Ct.

358, 548 A.2d 1284 (1988), which involved the plaintiff who was injured when his car strayed from the paved portion of the highway, entered an earthen drainage ditch after steering to the right to avoid a deer, struck and jumped a drainage culvert, crossed a driveway and then sideswiped the utility pole located eight feet from the paved portion from the highway. This Court affirmed the trial court's grant of a summary judgment in favor of the Bell Telephone Company, concluding that Bell's duty not to incommode or unreasonably interfere with public use of highways does not extend to vehicles which completely leave the highway out of control due to extraordinary occurrences and that the injuries were not proximately caused by the proximity of the pole to the highway.

More recently, this court has affirmed the trial court's grant of summary judgment in favor of a telephone company in *Novak v. Kilby,* 167 Pa.Commonwealth Ct. 217, 647 A.2d 687 (1994), which involved a sixteen-year old minor who lost control of his car, crossed the road, and crashed into a wooden post, a cable guardrail and then a telephone pole located five and one-half feet from the edge of the pavement. Before the accident, the minor consumed a can of beer at a party. This Court concluded that the causal connection between the location of the pole and the injury was too remote for the utility company's liability to attach.

We do not find, however, that the *Caldwell* and *Novak* holdings support the trial court's grant of nonsuit in this matter. *Caldwell* was decided based upon the unique facts involving a series of "extraordinary" events, which led to the Court's conclusion that Bell was entitled to a summary judgment. As the Court noted in *Caldwell,* the record did not support alleged previous similar accidents in the area, as in *Nelson.* In *Novak,* the record established that the pole had existed without any accident for nearly fifty years. By contrast, the Talaricos presented the evidence of PP & L's awareness of previous similar incidents in the area before its installation of the pole and the availability of less dangerous alternative locations.

The evidence, when viewed in the light most favorable to the Talaricos, is clear that the jury could reasonably have found that PP & L was negligent and that its negligence was a substantial cause of the injuries. Hence, the trial court invaded the province of the jury in taking the case from its determination. Accordingly, the order of the trial court granting a nonsuit in favor of PP & L is reversed and the nonsuit removed. This matter is remanded to the trial court for a new trial.

## ORDER

AND NOW, this 22nd day of November, 1994, the order of the Court of Common Pleas of Wayne County in the above-captioned matter is reversed, and the nonsuit granted in favor of the Pennsylvania Power and Light Company removed. This matter is remanded to the court for a new trial.

Jurisdiction relinquished.

COLINS, J., dissents.