**Raymond BOYER and Desiree Aguilar**

v.

**CITY OF PHILADELPHIA
and Sergeant Bagnell.**

**Appeal of Raymond BOYER, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 3, 1997.

Decided March 27, 1997.

---

Steven D. Janel, Philadelphia, for appellant.

Alan C. Ostrow, Deputy City Solicitor, for appellee, City of Philadelphia.

Before FRIEDMAN and LEADBETTER, JJ., and LORD, Senior Judge.

FRIEDMAN, Judge.

Plaintiff Raymond Boyer appeals from an order of the Court of Common Pleas of Philadelphia County (trial court) which denied Boyer's post-trial motion requesting removal of a nonsuit and entered judgment in favor of Defendants, City of Philadelphia (City) and City police officer, Sergeant Daniel Bagnell.

On January 26, 1995, Boyer filed a Civil Action Complaint against Defendants, alleging that, on February 4, 1993, Boyer was a pedestrian crossing South 13th Street near its intersection with Webster Street in the City when he was struck by a City police vehicle driven by Bagnell. Boyer alleged that this incident was the direct and proximate result of the joint or several and direct or vicarious negligence of Defendants, negligence which caused Boyer to suffer serious and permanent personal injuries. Boyer claimed damages which included, *inter alia*, past and future medical expenses and pain and suffering. (*See* Boyer's Complaint, paras. 6–8; R.R. at 304a–05a.)

Defendants filed an Answer denying Boyer's allegations and, in New Matter,[1] asserted various defenses, including the defense of governmental immunity under what is commonly called the Political Subdivision Tort Claims Act, §§ 8541 and 8542(b)(3) of the Judicial Code.[2] The case proceeded to arbitration, and the arbitrators found in favor of Defendants. (R.R. at 300a.) Boyer appealed.

A jury trial commenced on April 16, 1996, during which Boyer presented the videotaped deposition of Corey Ruth, M.D.[3] Dr. Ruth

---

1. By way of further New Matter, Defendants also brought a Cross–Claim against Desiree Aguilar, asserting that she was negligent in the supervision of Boyer, her minor child. (R.R. at 307a–12a.) Boyer filed an Answer to this New Matter on March 10, 1995. (R.R. at 314a, 300a.)

2. 42 Pa.C.S. §§ 8541–8542.

3. Shortly before trial, on April 11, 1996, Boyer's counsel took the deposition of Corey Ruth, M.D., Boyer's treating physician. During the course of his questioning, Boyer's counsel asked Dr. Ruth if he believed that Boyer had sustained a perma-

nent loss of a bodily function. (R.R. at 240a.) Defendants' counsel objected to the question on grounds that it violated Pennsylvania Rule of Civil Procedure 4003.5(c) by exceeding the fair scope of the medical reports Dr. Ruth submitted during discovery which, according to Defendants' counsel, never indicated such a permanent loss. (R.R. at 240a.) Dr. Ruth responded to the question in the affirmative, stating that Boyer had suffered permanent injury, (R.R. at 240a, 244a); however, during the trial, the trial judge sustained the objection of Defendants' counsel and struck Dr. Ruth's response. (R.R. at 97a.)

testified that he first saw Boyer on June 21, 1995, at which time Boyer stated that he had neck and back pain stemming from his February 4, 1993 accident. Dr. Ruth stated that he examined Boyer and found mild tenderness in the neck and upper back as well as tenderness at the L3–4, L4–5 and L5–S1 levels in the low back area. (R.R. at 218a–220a.) Dr. Ruth ordered an MRI done on Boyer and saw Boyer twice more, on July 27, 1995 and on August 29, 1995. Dr. Ruth indicated that at the July 27, 1995 visit, Boyer had no neck pain but still complained of low back pain; on August 29, 1995, Boyer continued to complain of intermittent low back pain. (R.R. at 221a.) Based on the MRI report and his examinations of Boyer, Dr. Ruth opined that Boyer had developed arthritis in the lumbar facets of the low back area and, consequently, suffered chronic, intermittent low back pain. (R.R. at 222a–23a, 291a–92a.) Dr. Ruth stated that Boyer's condition was caused by the February 4, 1993 accident, either through trauma to the facet joints at the time of the accident or by exacerbation of a preexisting dormant condition. (R.R. at 224a–25a, 229a.) Dr. Ruth indicated that Boyer's arthritic condition is permanent and progressive, that it will worsen as Boyer gets older, and that it might interfere with his ability to do certain activities. (R.R. at 225a–29a, 244a.)

Boyer also testified on his own behalf, providing his version of the events of February 4, 1993. According to Boyer, he was on his way to visit a friend and approached the intersection of 13th Street and Webster Street, intending to cross. Boyer stated that he looked both ways prior to crossing, and that, looking south, he saw a police car stopped at a stop sign one block away. Believing it was safe, Boyer began to cross the street, but when he had gone approximately one third of the way, he noticed the police car bearing down on him and making no attempt to stop. Boyer testified that he tried to jump out of the way but was struck on the right arm and right side and was thrown back into a parked car. (R.R. at 134a–39a.) Boyer also testified concerning the medical treatment he received and stated that, because he continues to suffer low back pain as a result of the incident, he is permanently prevented from doing many of the activities he previously performed.

■ At the close of Boyer's case-in-chief, Defendants moved for a compulsory nonsuit pursuant to Pennsylvania Rule of Civil Procedure 230.1,[4] which the trial court granted. Boyer filed a Motion for Post–Trial Relief alleging various errors by the trial court and requesting that the trial court remove the nonsuit and grant a new trial. (R.R. at 338a–45a.) Following oral argument on the matter, the trial court denied Boyer's post-trial motions and entered judgment on behalf of Defendants and against Boyer. (R.R. at 346a.) Boyer now appeals to this court.[5]

---

4. Rule 230.1 provides:

   In a case involving only one defendant, at the close of plaintiff's case on liability and before any evidence on behalf of the defendant has been introduced, the court, on the oral motion of a party, may enter a nonsuit if the plaintiff has failed to establish a right to relief. If the motion is not granted, the trial shall proceed. If the motion is granted, the plaintiff may file a written motion for the removal of the nonsuit.

   Pa. R.C.P. No. 230.1.

5. Defendants maintain that Boyer has waived all rights to appellate review here by failing to include a transcript of the post-trial oral argument as part of the certified record. Defendants note that, even if an issue is raised in a post-trial motion, the issue is waived for purposes of appellate review unless that issue is also briefed or argued during the post-trial proceedings. *Commonwealth v. Holzer*, 480 Pa. 93, 389 A.2d 101 (1978); *Berman v. Radnor Rolls, Inc.*, 374 Pa. Superior Ct. 118, 542 A.2d 525 (1988). According to Defendants, because no briefs were filed, and the trial court only heard oral argument on Boyer's post-trial motion, "Boyer had the obligation to see that the transcript of this post-trial oral argument was made and filed with the trial court, as he did with the trial transcript." (Defendants' brief at 9.) Defendants assert that, because the certified record to this court contains no record of what took place during this oral argument, Boyer failed to preserve any issues for appellate review. Not surprisingly, Defendants cite no authority for their position that the absence of a post-trial argument transcript in a case where no post-trial briefs are filed precludes appellate review; indeed, this position is unfounded. As stated, an issue raised in post-trial motions must either be briefed *or* argued, *Holzer*, and there is no question that the trial court heard oral argument on Boyer's post-trial motion here. In fact, we note that, unlike trial court proceedings, such arguments are not recorded.

■ Our standard for reviewing a decision to grant a compulsory nonsuit is well established. A nonsuit may not be granted unless, viewing the evidence and all reasonable inferences arising from it in the light most favorable to the plaintiff, and resolving all conflicts in his favor, a jury could not reasonably conclude that the elements of the cause of action have been established. *Iandiorio v. Kriss & Senko Enterprises, Inc.*, 512 Pa. 392, 517 A.2d 530 (1986); *Talarico v. Bonham*, 168 Pa.Cmwlth. 467, 650 A.2d 1192 (1994). Entry of a compulsory nonsuit is supportable only in a clear case, where the facts and circumstances lead to only one conclusion—the absence of liability. *Harvilla v. Delcamp*, 521 Pa. 21, 555 A.2d 763 (1989); *Talarico*.

In order to establish a cause of action for negligence, a plaintiff must prove the following elements: (1) a defendant's duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages. *Morena v. South Hills Health System*, 501 Pa. 634, 462 A.2d 680 (1983); *Talarico*.

As indicated, Boyer raises a number of claims of error by the trial court in its conduct of the trial; however, for our purposes, we need focus only on the rationale expressed by the trial court for its order to enter, and refusal to remove, the nonsuit. Specifically, the trial court concluded that Boyer did not establish his right to damages

for pain and suffering because he "failed to prove that his injury was permanent or of a serious nature as to impair a bodily function, which would be necessary to circumvent the Political Subdivision Tort Claims Act, ... and imposed [sic] liability on the City of Philadelphia." (Trial ct. op. at 1; R.R. at 347a.)[6] The trial court noted that Boyer presented the testimony of Dr. Ruth to substantiate these injuries and reasoned that, "although the doctor testified to a reasonable degree of medical certainty as to the permanency of [Boyer's] alleged injuries he provided contradictory testimony, exemplified through the following dialogues:

Q: Okay. So he didn't have any nerve damage?

A: I felt he had no nerve damage. I felt he had no neurological compromise. All my neurological testing was normal. (Dr. Ruth's Deposition testimony p. 55–56)

Q: Okay. And you also examined his—his upper body and you said that that was fine?

A: Yes. The *only* problems I found of his neck and upper body were tenderness in the neck area. *With regards to his low back, the same thing...* (p. 56 emphasis added)

. . .

Q: Okay. In your July 27th report, in the first paragraph you said here his neck is asymptomatic. Could you tell me what that means?

---

6. Section 8542 of the Political Subdivision Tort Claims Act, which sets forth exceptions to governmental immunity, provides in pertinent part:

(b) **Acts which may impose liability.**—The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:
  (1) Vehicle liability—The operation of any motor vehicle in the possession or control of the local agency, ...
42 Pa.C.S. § 8542(b)(1).
  42 Pa.C.S. § 8553 places limitations on damages, stating:
(c) **Types of losses recognized.**—Damages shall only be recoverable for:
  . . . .
  (2) Pain and Suffering in the following instances:
  (i) death: or
  (ii) *only in cases of permanent loss of a bodily function*, permanent disfigurement, or

permanent dismemberment where the medical and dental expenses referred to in paragraph (3) are in excess of $1,500.00.
  (3) *Medical and dental expenses including the reasonable value of reasonable and necessary medical and dental services, prosthetic devices, and necessary ambulance, hospital, professional nursing, and physical therapy expenses accrued and anticipated in the diagnosis, care and recovery of the claimant.*
  . . . .
42 Pa.C.S. §§ 8553(c)(2) and (3) (emphasis added). Our supreme court has interpreted the phrase "permanent loss of a bodily function" to mean that, as a proximate result of the accident, the injured claimant is unable to do or perform a bodily act or bodily acts which the claimant was able to do or perform prior to sustaining the injury, and that the loss of such ability is permanent. *Walsh v. City of Philadelphia*, 526 Pa. 227, 585 A.2d 445 (1991).

A: That means he has *no* neck pain. His neck was *completely* asymptomatic. He had *full range of motion* and did not palpate any tenderness nor did he have any complaints of tenderness. (pp. 57–58 emphasis added)

. . .

Q: So—

A: Whatever neck problems he had that day had *resolved completely.* (p. 58 emphasis added)

Q: Okay. And there was also no radiculopathy, no tingling, no nerve problems on that day?

A: Yeah. Yes, you're correct. (p. 58)"

(Trial ct. op. at 347a–48a.) After setting forth its standard of review, the trial court then decided to deny the motion for posttrial-relief, concluding that Boyer presented no evidence to substantiate his cause of action. (R.R. at 347a–49a.)

 As evident from its brief opinion, the trial court granted the nonsuit in favor of Defendants based *solely* on its determination that, because of Dr. Ruth's inconsistent testimony, Boyer could not establish a permanent loss of body function. The trial court found that Dr. Ruth testified to the requisite degree of medical certainty that Boyer's injuries were permanent,[7] but discounted this testimony based on Dr. Ruth's statement that Boyer's injuries had, in fact, resolved. After carefully reviewing the record in the light most favorable to Boyer, we find that we cannot accept the trial court's reasoning.

In the testimony cited by the trial court, Dr. Ruth does testify that Boyer had recovered completely from his *neck* problems; however, we note that Boyer asserts a permanent loss of bodily function due to problems involving his *low back,* not his neck. In this regard, Dr. Ruth testifies as to the permanence of Boyer's low back problems and never contradicts or recants that opinion in any other portion of his testimony. Indeed, with respect to Boyer's back pain, Dr. Ruth

clearly indicates that Boyer's condition will not resolve and, in fact, will progressively worsen. Because the trial court's entry of and failure to remove a nonsuit on this basis was error, we reverse.[8]

### *ORDER*

AND NOW, this 27th day of March, 1997, the order of the Court of Common Pleas of Philadelphia county, dated June 25, 1996, is hereby reversed, and the nonsuit granted in favor of the City of Philadelphia and Sergeant Daniel Bagnell is removed. This matter is remanded to the court for a new trial.

Jurisdiction relinquished.

---

7. Whether Dr. Ruth's testimony includes any statement to indicate that Boyer suffered a permanent loss of bodily function is a matter of considerable dispute between the parties. However, this dispute is rendered moot by the trial court's finding that Dr. Ruth testified as to the

permanence of Boyer's injuries, a finding supported by substantial evidence.

8. Because of our disposition here, we need not address Boyer's other allegations of error.